Sixth Division
November 7, 2008

No. 1-07-3262

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellant, | ) | of Cook County |
| | ) | |
| v. | ) | |
| | ) | TJ 130 622 |
| KEVIN CAREY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | Honorable |
| | ) | Steven Goebel, |
| | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the opinion of the court:

On May 5, 2006, defendant, Kevin Carey, was arrested and charged with driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2006)) and aggravated assault (720 ILCS 5/12-2(a)(1) (West 2006)).  Prior to trial, defendant filed a motion *in limine* to bar admission of the results of a breath test given to measure his blood-alcohol content.  Following a hearing, the trial court granted defendant's motion and the State now appeals that suppression order.  For that reasons that follow, we reverse and remand.

The following evidence was presented at the hearing on defendant's motion.

Sergeant Steven Cannizzo of the Chicago police department's internal affairs division testified that on the morning of May 6, 2006, he was notified that defendant had been placed under arrest for aggravated assault and a possible DUI and was assigned to investigate the incident.  Sergeant Cannizzo arrived at the police station at approximately 7:30 a.m. and was told by the arresting officers that defendant was being processed as a "refusal" to submit to a breath test.  The sergeant thereafter began his investigation.

Sergeant Cannizzo spoke to the arresting officers and the victim, 52-year-old Willie Flood, to determine the events which led to defendant's arrest. Based upon those conversations, Sergeant Cannizzo learned that the victim was in his vehicle at a stoplight when he saw defendant in a vehicle and "words were spoken" by defendant. The victim continued driving toward an expressway and then stopped at another stoplight, where "more words were exchanged." As the victim entered the expressway, defendant began to "tail" him at a high rate of speed and, at some point, defendant pulled next to the victim's vehicle and pointed a gun at him. The victim then called 911 and emergency personnel attempted to direct him to a nearby police station. Efforts to direct the victim to the nearby police station failed when he made a wrong turn. The victim subsequently drove in the direction of a different police station and observed a "squadrol" parked on the street. He pulled his vehicle to the side of the road and fled to the nearby officers as defendant followed him while armed with a weapon. The officers, who were not aware that defendant was a police officer, ordered him to drop his weapon. Defendant did not respond or look in the officers' direction, but instead continued to point his weapon at the victim. During this time, the victim continued to run toward the officers while yelling, "he has a gun, he has a gun." Eventually, one of the officers either pushed or tackled defendant and knocked the weapon out of his hand. At that point, it was revealed that defendant was a Chicago police officer.

Sergeant Cannizzo, who transcribed the 31-minute phone conversation between the victim and emergency personnel, described the victim during this call as "in fear of his life," "delirious," "screaming," and "yelling for help." According to Sergeant Cannizzo, defendant

made certain derogatory remarks regarding the victim's race as an explanation for why he chased the victim.

After learning of the events which led to defendant's arrest, Sergeant Cannizzo read defendant his "Administrative Proceeding Rights and Notification of Charges." and ordered him to submit to a breath test. The administrative rights advised defendant:

"1. Any admission or statement made by you in the course of this hearing, interrogation or examination may be used as the basis for your suspension or as the basis for charges seeking your removal or discharge or suspension in excess of 30 days.

2. You have the right to counsel of your choosing to be present with you to advise you at this hearing, interrogation or examination and you may consult with him as you desire.

3. You have a right to be given a reasonable time to obtain counsel of your own choosing.

4. You have no right to remain silent. You have an obligation to truthfully answer questions put to you. Your are advised that your statements or responses constitute an official police report.

5. If you refuse to answer questions put to you, you will be ordered by a superior officer to answer the questions.

6. If you persist in your refusal after the order has been

given to you, you are advised that such refusal constitutes a violation of the Rules and Regulations of the Chicago Police Department and will serve as a basis for which your discharge will be sought.

7. You are further advised that by law any admission or statement made by you during the course of this hearing, interrogation or examination and the fruits thereof cannot be used against you in a subsequent criminal proceeding."

According to Sergeant Cannizzo, he ordered defendant to submit to the test because there was evidence that defendant had been drinking, including that he smelled of alcohol, that he had bloodshot eyes, and that he "leaned in and out of being cooperative and defiant."

Sergeant Cannizzo also testified that he did not tell defendant he would be fired if he refused to take the breath test. Sergeant Cannizzo explained that if an officer refuses a direct order, an additional charged is made against that officer that could form the basis for disciplinary action ranging from a reprimand to termination. The sergeant also explained that an officer has a right to an appeal even if he is terminated and that he was unaware of any rule which stated that any officer who refused a direct order would be unequivocally terminated.

Under questioning by the trial court, Sergeant Cannizzo explained that he was present at the police station for purposes of an administrative investigation and that he ordered defendant to submit to the breath test as part of that investigation. The sergeant also testified that, to the best of his knowledge, the criminal investigation terminated when defendant initially refused to

1-07-3262

submit to the breath test.

During the hearing on defendant's motion, the parties stipulated that there was probable cause to arrest defendant for aggravated assault and DUI and that no physical force was used to obtain defendant's breath analysis.

The trial court began its ruling by finding that defendant was arrested based upon probable cause for DUI and aggravated assault and that, pursuant to that arrest, defendant was asked but refused to submit to a breath test. The court then stated that the question became whether the breath test was a search incident to an arrest and what effect the administrative proceeding had upon the admissibility of the test results. The court noted that, according to Sergeant Cannizzo's testimony, the criminal investigation ended when defendant initially refused to submit to the test and defendant was later advised of his administrative rights and ordered to submit to the test pursuant to an administrative investigation. The court further noted that the "Notification of Charges and Allegations" against defendant indicated that he submitted to an "administrative breathalyzer." The court then stated that consent in context of the fourth amendment was an issue in the case, that after being advised of his administrative rights, defendant did not feel he "[had] any choice" but to submit to the breath test, and that defendant would not have submitted to the test unless he was ordered to and promised that it would not be used against him in a criminal proceeding. The court thus concluded that it went against "fundamental fairness" and the "constitution" to allow the test results into evidence after defendant was told that those results could not be used against him in a criminal proceeding. Accordingly, the court found that the breath test constituted an invalid search and seizure and

5

1-07-3262

granted defendant's motion to bar admission of the test results.

The State filed a certificate of substantial impairment and timely appealed.

The State contends that the trial court erred by suppressing the results of defendant's breath test. The State asserts that the trial court erroneously considered whether defendant consented to the test when, in fact, consent is not a prerequisite to the admissibility of the test results. The State further maintains that defendant's test results are admissible because the police had probable cause to arrest defendant and because defendant's breath sample was properly obtained as a search incident to his lawful arrest.

Defendant responds that his breath-test results were properly suppressed because: (1) the results were obtained pursuant to a administrative, rather than criminal, investigation; (2) he did not voluntarily consent to the test; (3) he submitted to the test only under threat of termination; and (4) the State is precluded from using the test results under the doctrine of judicial estoppel.

When reviewing a trial court's ruling on a motion to suppress, we apply the two-part standard of review adopted by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996). *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). Under this standard, the trial court's factual findings are reviewed for clear error and will be upheld on review unless such findings are against the manifest weight of the evidence. *Luedemann*, 222 Ill. 2d at 542. However, we review *de novo* the ultimate question of whether the evidence should be suppressed. *Luedemann*, 222 Ill. 2d at 542.

In this case, the trial court ruled that defendant would not have submitted to the breath test had he not been ordered to do so pursuant to an administrative investigation and told that

nothing he said during that investigation could be used against him in a criminal proceeding. In other words, the trial court essentially ruled that defendant did not knowingly and voluntarily consent to the breath test for purposes of those test results being used against him at his trial for DUI and aggravated assault. Likewise, in urging affirmance of the trial court's ruling, defendant argues that the test results were properly suppressed because he did not voluntarily consent to the test. However, a review of the relevant case law establishes that in Illinois, consent is not a prerequisite to the admissibility of breath-test results in a DUI prosecution.

It is well established that only fourth amendment constraints and specific statutory provisions govern the admissibility of blood-alcohol tests in a DUI prosecution. *People v. Yant*, 210 Ill. App. 3d 961, 964 (1991); *People v. Poncar*, 323 Ill. App. 3d 702, 706 (2001). In *Schmerber v. California*, 384 U.S. 757, 768-72, 16 L. Ed. 2d 908, 918-20, 86 S. Ct. 1826, 1834-36 (1966), the United States Supreme Court held that taking a blood sample without the defendant's consent or a search warrant was a "reasonable" search under the fourth amendment where there was probable cause to believe the defendant was intoxicated and the delay caused by obtaining a search warrant might have resulted in the destruction of evidence, given that the level of alcohol in the blood naturally dissipates shortly after drinking stops. The Illinois Supreme Court subsequently endorsed the holding in *Schmerber* in *People v. Todd*, 59 Ill. 2d 534 (1975). In *Todd*, the court considered whether section 11-501 of the Illinois Vehicle Code (Vehicle Code) (Ill. Rev. Stat. 1975, ch. 95½, par. 11-501(c)(3)) prohibited the evidentiary use of a blood sample obtained without the defendant's consent. *Todd*, 59 Ill. 2d at 536. At the time *Todd* was decided, section 11-501 of the Vehicle Code provided:

"Evidence based upon a chemical analysis of blood, urine, breath

or other bodily substance shall not be admitted unless such

substance was procured and such analysis made with the consent of

the person as provided by this Chapter, whose bodily substance

was so analyzed." Ill. Rev. Stat. 1975, ch. 95½, par. 11-501(c)(3).

Based upon the language of the statute, the court found that section 11-501 required consent to chemical testing in order for test results to be admissible. *Todd*, 59 Ill. 2d at 544. The court noted, however, that the statute afforded protection to DUI defendants greater than that required by *Schmerber* and recognized that, absent a statutory provision to the contrary, police may constitutionally seize bodily substances from a defendant without his consent when probable cause is present and the evidence may quickly dissipate:

"Since *Schmerber v. California* (1966), 384 U.S. 757, 16 L. Ed. 2d

908, 86 S. Ct. 1826, it is clear that a compulsory blood test does

not violate any constitutional rights of an individual merely

because he objected to such tests. Further, the absence of a formal

arrest may not taint a limited search, given probable cause and

evidence that may dissipate. (See *Cupp v. Murphy* (1973), 412

U.S. 291, 36 L. Ed. 2d 900, 93 S. Ct. 2000.) A number of cases,

dealing specifically with the question of blood tests and the

removal of blood from a person without consent, have upheld the

constitutional right to do so even where the person was

1-07-3262

unconscious and, in some cases, without a formal arrest so long as

probable cause is present. [Citations.]

Thus, absent a more limiting statutory provision, the taking

of a blood sample does not require the consent of the donor." *Todd*,

59 Ill. 2d at 544-45.

Although cases such as *Schmerber* and *Todd* dealt with the taking of a blood sample, the

reasoning employed in those cases also applies to the taking of a breath sample.  See *People v.*

*Mulack*, 40 Ill. 2d 429, 431-32 (1968); *Village of Algonquin v. Ford*, 145 Ill. App. 3d 19, 21

(1986).

The consent requirement found in section 11-501 was eliminated by Public Act 82-311

(Pub. Act 82-311, January 1, 1982).  See Ill. Rev. Stat. 1981, ch. 95½, par. 11-501; 625 ILCS

Ann. 5/11-501, Historical & Statutory Notes, at 324-25 (Smith-Hurd 2002).  Subsequently,

Illinois courts have repeatedly held that consent is not a factor to be considered by the court when

determining whether blood-alcohol test results are admissible into evidence and that involuntary

tests of bodily substances do not violate any constitutional rights where the search is supported

by probable cause, the evidence is of an evanescent nature, and the procedures employed to

obtain the substance are reasonable.  See, *e.g.*, *Village of Algonquin*, 145 Ill. App. 3d at 21;

*People v. Brown*, 175 Ill. App. 3d 725, 726-27 (1988); *Yant*, 210 Ill. App. 3d at 963-65; *People v.*

*Byrd*, 215 Ill. App. 3d 468, 471 (1991); *People v. Ayres*, 228 Ill. App. 3d 277, 279 (1992).

Finally, section 11-501.2(c)(2) of the Vehicle Code, which went into effect in 1995,

provides:

9

"Notwithstanding any ability to refuse under this Code to submit to these tests or any ability to revoke the implied consent to these tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by *** a person under the influence of alcohol *** has caused the death or personal injury to another, that person shall submit, upon the request of a law enforcement officer, to a chemical test or tests of his or her blood, breath or urine for purposes of determining the alcohol content thereof or the presence of any other drug or combination of both." 625 ILCS 5/11-501.2(c)(2) (West 2006).

In *People v. Jones*, 214 Ill. 2d 187, 199-202 (2005), our supreme court held that section 11-501.2(c)(2) did not create a right to refuse chemical testing and that it permitted nonconsensual chemical testing even in instances that do not involve death or personal injury. In reaching that conclusion, the court noted that its holding did not suggest that a DUI arrestee's lack of a right to refuse chemical testing under section 11-501.2(c)(2) permitted "law enforcement officers to use physical force in obtaining blood, urine, [or] breath samples." *Jones*, 214 Ill. 2d at 201.

In light of the above, it is clear that defendant's consent to the breath test, knowing or otherwise, is not a factor to be considered in determining whether the test results are admissible at trial. Rather, irrespective of whether defendant was compelled to submit to the test during an administrative investigation, the proper fourth amendment inquiry is whether the police had probable cause to arrest defendant and charge him with DUI, whether the delay caused by

obtaining a search warrant would have risked the loss of evidence, and whether the procedure employed to obtain the breath sample was reasonable.

In this case, defendant was already in custody when he submitted to the breath test and, at the hearing on defendant's motion *in limine*, the parties stipulated that the arrest was supported by probable cause. Moreover, alcohol in the bloodstream begins to naturally dissipate shortly after drinking stops and therefore the delay in obtaining a search warrant would have risked the loss of evidence. *Schmerber*, 384 U.S. at 770-71, 16 L. Ed. 2d at 919-20, 86 S. Ct. at 1835-36. Finally, a breath test is a minimal intrusion and a reasonable means to measure a suspect's blood-alcohol content (*Byrd*, 215 Ill. App. 3d at 471), and the parties stipulated that no physical force was used to obtain defendant's breath sample. Accordingly, under the line of authority discussed above, the results of defendant's breath test should not have been suppressed and are admissible at trial.

Defendant nevertheless claims that because the breath test was performed pursuant to an administrative investigation, the results of that test cannot be used at a subsequent criminal proceeding. Defendant relies upon *People v. Madison*, 121 Ill. 2d 195 (1988), in support of this claim. However, we find defendant's reliance on *Madison* unpersuasive.

In *Madison*, two Secretary of State police officers conducted a warrantless inspection of the defendant's salvage yard in response to complaints concerning the condition of the premises. During that inspection, the police seized numerous vehicle certificates of title without the defendant's permission. *Madison*, 121 Ill. 2d at 199. The officers conducted the search pursuant to section 5-403 of the Vehicle Code, which permitted authorized representatives of the Secretary

of State to perform warrantless inspections of the records and premises of salvage yards for the purpose of determining the accuracy and completeness of the records required to be kept by salvage yards. *Madison*, 121 Ill. 2d at 199-200. On appeal, the supreme court was asked whether, when police officers have discovered evidence of a crime during the course of a lawful administrative inspection conducted pursuant to section 5-403 of the Vehicle Code, the officers were required to obtain a warrant before seizing the evidence. *Madison*, 121 Ill. 2d at 201. The court interpreted a specific subsection of section 5-403 and held that, pursuant to that section, the police were required to obtain a warrant before seizing any evidence discovered during their inspection. *Madison*, 121 Ill. 2d at 201.

The court further stated, however, that even if the statute did not require a warrant, the evidence seized by police in that case would still have been excludable. *Madison*, 121 Ill. 2d at 209. The court noted that "[o]ne of the fundamental principles of administrative searches is that the government may not use an administrative inspection scheme as a pretext to search for evidence of criminal [activity]." *Madison*, 121 Ill. 2d at 209. The court further noted that, in the case before it, the search was not initiated for the purpose of inspecting the records but instead in response to complaints about the condition of the salvage yard and that the "clear implication [was] that the police were conducting the inspection as a pretext for placating defendant's neighbors or in order to find criminal violations." *Madison*, 121 Ill. 2d at 210.

Contrary to defendant's argument, the holding in *Madison* does not establish that any evidence obtained during an administrative investigation cannot be used in a subsequent criminal proceeding. Rather, the case was decided on purely statutory grounds and applies only to an

administrative inspection pursuant to section 5-403 of the Vehicle Code. In this case, unlike in *Madison*, the police had already arrested defendant based upon probable cause at the time defendant submitted to the breath test. Due to the presence of probable cause and the evanescent nature of alcohol in the blood stream, the police were not required to obtain a warrant prior to administering the breath test. See *Schmerber*, 384 U.S. at 768-72, 16 L. Ed. 2d at 918-20, 86 S. Ct. at 1834-36.

More importantly, the portion of the court's analysis in *Madison* that defendant relies upon was focused on deterring an administrative inspection scheme from being used as a pretext to search for evidence of criminal activity. The court noted that, under those circumstances, "if 'the primary objective of the search is to gather evidence of criminal activity' a search warrant based on probable cause must be obtained." *Madison*, 121 Ill. 2d at 210, quoting *Michigan v. Clifford*, 464 U.S. 287, 294, 78 L. Ed. 2d 477, 484, 104 S. Ct. 641, 647 (1984). In this respect, we note that the concern over pretextual searches expressed in *Madison* was also a factor that was considered by the court in *Yant*, 210 Ill. App. 3d at 963, where the results of a physician-ordered blood test for treatment and diagnostic purposes were held admissible, even though the defendant was restrained at the time the test was administered and had previously refused to provide a blood sample for treatment purposes. In reaching that conclusion, the court noted that there was "no indication in the record that either the emergency restraints or the physician's blood test order here was a subterfuge procured by the police or any form of State action." *Yant*, 210 Ill. App. 3d at 965; see also *Poncar*, 323 Ill. App. 3d at 707 (following *Yant* and finding admissible the results of a blood test ordered by a physician over the defendant's objection and

while the defendant was handcuffed to a gurney where there was no evidence indicating that "the blood test was the result of police subterfuge").

Our holding that defendant's breath-test results are admissible at trial is not inconsistent with these principles or with the decision in *Madison*. As the decisions in *Yant* and *Poncar* suggest, regardless of the purpose for which a blood-alcohol test is administered, the admissibility of the test results at a DUI trial is determined by the fourth amendment inquiry set forth in *Schmerber* and discussed above. We find nothing in the record before us to take this case outside of the parameters set forth in *Schmerber*. In this case, unlike in *Madison*, there is simply nothing in the record to suggest that Sergeant Cannizzo's administrative investigation was conducted as a pretext in order to obtain evidence to be used against defendant at trial. The record indicates that Sergeant Cannizzo was conducting a legitimate administrative investigation when he ordered defendant to submit to the breath test, and while we find that the results of that test can be used against defendant at trial, the salient point is that the investigation was not a subterfuge in order to seize evidence of criminal activity. Thus, we conclude that the test results need not be suppressed in this case on the ground that defendant submitted to the test during an administrative investigation.

Equally unpersuasive is defendant's reliance upon *Tate v. Police Board*, 241 Ill. App. 3d 927 (1993), for the proposition that this court has recognized the distinction between evidence obtained pursuant to an administrative investigation and evidence obtained pursuant to a criminal investigation. In *Tate*, 241 Ill. App. 3d at 931, the defendant, a police officer, was arrested at the police station following an altercation with a civilian and told that she would be charged with

14

DUI. The officers then told the defendant that they were commencing an administrative investigation and, to that end, advised the defendant of her administrative rights and told her that she was no longer in custody and that the administrative procedure was not to garner evidence against her in a criminal prosecution. *Tate*, 241 Ill. App. 3d at 932. The defendant was ordered to provide a urine sample, to submit to a breath test, and told that she could not be forced to do either but that, under administrative law, she was required to comply. *Tate*, 241 Ill. App. 3d at 932. The defendant refused to submit to the breath and the urinalysis. Following a subsequent administrative hearing before the police board, the defendant was found guilty of violating several police department rules, including refusing to follow a direct order, and was discharged. *Tate*, 241 Ill. App. 3d at 929.

On appeal, the defendant challenged the board's finding that she violated a direct order, arguing that her *Miranda* rights protected her from having to submit to the tests. *Tate*, 241 Ill. App. 3d at 934. In rejecting that claim, the court stated that after reviewing the record it was satisfied that the defendant received the full constitutional protection afforded to her by the *Miranda* rights and noted that the testimony at the hearing established that "the criminal aspect of the investigation had ended and the administrative process had commenced" when the defendant refused to obey the orders of her superiors. *Tate*, 241 Ill. App. 3d at 934.

Defendant overstates the relevance of *Tate* to the facts of the present case. The court in *Tate* recognized the distinction between the criminal and the administrative investigations in that case for purposes of establishing that the defendant refused to comply with the officers' orders during an administrative investigation and that her *Miranda* rights therefore did not protect her

15

against having to submit to the tests. Unlike the situation in this case, the defendant in *Tate* did not submit to the tests and the State was not seeking to introduce the test results into evidence at a criminal proceeding. Therefore, the court did not have occasion to consider the issue raised in this case and nothing in the court's decision can be construed to stand for the proposition that evidence obtained during an administrative investigation cannot subsequently be used during a criminal proceeding.

Defendant further claims that the breath-test results should be suppressed because he was told by Sergeant Cannizzo that those results would not be used against him in a criminal proceeding. Therefore, because the State is now attempting to use the test results in a criminal proceeding, defendant argues that he was "deceived" and "coerced" into submitting to the test. We find this argument unpersuasive.

We initially note that the administrative rights defendant was advised of did not mention the breath-test results or indicate the manner in which those results could be used against him. Rather, defendant was advised that any "admission or statement" he made and the "fruits thereof" would not be used against him in a criminal proceeding. Therefore, we conclude that defendant was not misinformed that the test results could not be used against him in a criminal proceeding.

In any event, even if we were to assume that defendant was misinformed that the test results could not be used against him in a criminal proceeding, we would nevertheless find that the results are admissible at defendant's trial. In this regard, we note that an argument similar to that raised by defendant in this case was considered and rejected in *Brown* and *Byrd*. In *Brown*,

175 Ill. App. 3d at 726, the defendant was arrested on private property while asleep in his vehicle and then brought to the police station. At the police station, the defendant agreed to take a breath test although he was told by the arresting officer that the "Warnings to Motorists" did not apply to him and that he did not have to take the test because the offense occurred on private property. *Brown*, 175 Ill. App. 3d at 726. Defendant was charged with DUI and the trial court subsequently suppressed defendant's test results, noting that it was doing so "'under the doctrine of fairness'" based upon the confusion created by the statements the arresting officer made to the defendant. *Brown*, 175 Ill. App. 3d at 726.

On appeal, the defendant argued that the trial court's ruling should be upheld because the officer's statements confused him and therefore rendered his consent involuntary. *Brown*, 175 Ill. App. 3d at 726. The appellate court noted that the issue presented was "whether defendant voluntarily consented to the breathalyzer in that he knew or was told the results could be used against him before he consented." *Brown*, 175 Ill. App. 3d at 729. The court held that voluntary or knowing consent was not a prerequisite to admissibility of the breath test results and therefore reversed the trial court's order suppressing the defendant's test results. *Brown*, 175 Ill. App. 3d at 726-27, 729.

Similarly, in *Byrd*, 215 Ill. App. 3d at 469, the defendant was arrested after he backed his car into another vehicle and was observed by police staggering and smelling strongly of alcohol. Defendant was read the standard motorist's warnings and thereafter consented to a breath test. At a hearing prior to trial, the trial court granted defendant's motion to suppress the results of his breath test on the grounds that defendant was misadvised as to the consequences of his refusal to

1-07-3262

take the test. *Byrd*, 215 Ill. App. 3d at 470. On appeal, the reviewing court reversed the trial court's suppression order, holding that "defendant's consent, informed or otherwise, was not statutorily or constitutionally required for the arresting officer to administer a breath test." *Byrd*, 215 Ill. App. 3d at 471-72.

As these decisions illustrate, questions such as whether a defendant was told that a breath-test result could be used against him before consenting to the test and whether a defendant was misadvised as to the consequences of refusing to take the test simply go toward the issue of whether the defendant knowingly and voluntarily consented to the test. We believe that the same is true in this this case with respect to defendant's claim that he was told the test results would not be used against him in a criminal proceeding. Even if the administrative rights that were read to defendant could be construed to imply that the breath-test results would not be used against him, defendant's subjective understanding of those rights and the manner in which the test results could be used merely raise the issue of whether defendant knowingly and voluntarily consented to the breath test. However, because defendant was not required to consent to the test in order for the results to be admissible at trial, his subjective understanding that the test results could not be used against him in a criminal proceeding does not establish that defendant's fourth amendment rights were violated or require the test results to be suppressed as the product of an unreasonable search and seizure.

Defendant further contends that the test results should be suppressed because he provided the breath sample only under threat of termination. Defendant claims that Sergeant Cannizzo gave him a direct order to provide a breath sample and advised him pursuant to his administrative

18

1-07-3262

rights that he would be fired if he refused to submit to the breath test. Citing *Garrity v. New Jersey*, 385 U.S. 493, 17 L. Ed. 2d 562, 87 S. Ct. 616 (1967), defendant asserts that statements or results of examinations made by police officers under threat of removal are not voluntary and cannot be used in subsequent prosecutions against police officers.

In *Garrity*, the United States Supreme Court held that the protections of the fifth and fourteenth amendments against coerced statements prohibit use in subsequent criminal proceedings of statements obtained from police officers under threat of removal from office. *Garrity*, 385 U.S. at 500, 17 L. Ed. 2d at 567, 87 S. Ct. at 620. Defendant asks this court to apply *Garrity* and the fifth amendment privilege against self-incrimination[1] to the present case in order to bar the State from using the test results at his trial for DUI and aggravated assault.

However, it is well settled that the fifth amendment applies only to testimonial or communicative evidence and that it does not apply to physical evidence. As the United States Supreme Court has explained, "[t]he distinction which has emerged *** is that the [fifth amendment] privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes the suspect or accused the source of 'real or physical evidence' does not violate it." *Schmerber*, 384 U.S. at 764, 16 L. Ed. 2d at 916, 86 S. Ct. at 1832; see also *Holt v. United States*, 218 U.S. 245, 252-53, 54 L. Ed. 1021, 1030, 31 S. Ct. 2, 6 (1910) ("The prohibition of compelling a man in a criminal court to be witness against himself is a prohibition

---

[1]The fifth amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. This provision applies to the states through the fourteenth amendment (U.S. Const., amend. XIV). *Allen v. Illinois*, 478 U.S. 364, 368, 92 L. Ed. 2d 296, 303, 106 S. Ct. 2988, 2991 (1986).

19

of the use of physical force or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material"); *Oregon v. Elstad*, 470 U.S. 298, 304-07, 84 L. Ed. 2d 222, 229-31, 105 S. Ct. 1285, 1290-92 (1985) (noting that the fifth amendment "prohibits use by the prosecution in its case in chief only of compelled testimony" and that it "is not concerned with nontestimonial evidence").

Based upon this distinction, the Court in *Schmerber* held that the results of a state-compelled blood-alcohol test constituted "real or physical evidence" and therefore did not fall within the protection of the fifth amendment privilege. *Schmerber*, 384 U.S. at 761, 16 L. Ed. 2d at 914, 86 S. Ct. at 1830-31 ("We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends"). In reaching this conclusion, the court likened the compulsory administration of a blood test to "compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make particular gesture." *Schmerber*, 384 U.S. at 764, 16 L. Ed. 2d at 916, 86 S. Ct. at 1832; see also *United States v. Hubbell*, 530 U.S. 27, 35, 147 L. Ed. 2d 24, 35, 120 S. Ct. 2037, 2042-43 (2000) (noting the "significant difference" between compelling a person to provide testimony or communicative evidence and compelling a person to engage in incriminating conduct and recognizing that, therefore, "even though the act may provide incriminating evidence, a criminal suspect may be compelled to put on a shirt, to provide a blood sample or handwriting exemplar, or to make a recording of his voice"). Our own supreme court,

in rejecting an argument that the State's attempt to admit the results of a breath test which the defendant claimed he was compelled to take in violation of his fifth amendment rights, adopted the holding in *Schmerber* in *Mulack*, 40 Ill. 2d at 431-33.

*Schmerber* and *Mulack* thus establish that a compulsory blood or breath test does not implicate the fifth amendment's prohibition on the use of compelled testimony because the results of such tests are not evidence of a communicative or testimonial nature. Accordingly, even if defendant in this case was compelled to submit to the breath test, the product of that compulsion was neither defendant's testimony nor evidence relating to some communicative act by defendant and therefore does not fall within the protection of the fifth amendment. See *Schmerber*, 384 U.S. at 765, 16 L. Ed. 2d at 916-17, 86 S. Ct. at 1833 ("Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds"). Thus, we find that the holding in *Garrity*, which is based upon an application of the fifth amendment privilege, is inapplicable to this case.

Defendant further argues that, even if this court finds that *Garrity* applies only to testimonial evidence, the results of his breath test must still be suppressed. Citing *People v. Mule*, 131 Misc. 2d 635, 501 N.Y.S.2d 283 (1986), defendant asserts that courts have routinely used a *Garrity*-type analysis in cases dealing with non-testimonial evidence such as blood test results.

In *Mule*, the defendants, railroad employees, were ordered by a superior to submit to blood tests following a fatal train accident and argued that the test results should be suppressed

1-07-3262

because their consent was coerced under threat of discipline and removal from the railroad. *Mule*, 131 Misc. 2d at 636, 501 N.Y.S.2d at 284. The court discussed and applied the law as it had developed under *Garrity*, noting that although the case before it did not arise under the fifth amendment, "the logic underlying *Garrity* and its progeny is persuasive." *Mule*, 131 Misc. 2d at 636-37, 501 N.Y.S.2d at 284. The court ultimately held that the defendants' fear of termination was not sufficiently "substantial" to require suppression of the blood test results. *Mule*, 131 Misc. 2d at 640, 501 N.Y.S.2d at 286.

   *Mule* is easily distinguishable. The court in *Mule* applied the logic underlying *Garrity* because at the time that the case was decided, New York law provided that the results of a blood test taken without an authorizing court order were inadmissible against a defendant in any subsequent criminal proceeding unless the defendant consented to taking the test. See *Mule*, 131 Misc. 2d at 636, 501 N.Y.S.2d at 284. In this case, defendant's consent was not required in order for the breath test results to be admissible at his trial. Moreover, defendant has not cited to any cases in which a court has applied *Garrity* or the analysis contained therein in order to suppress the results of a blood-alcohol test where, as here, consent to the test was not required and the results of that test constituted "real or physical evidence." See *Schmerber*, 384 U.S. at 764-65, 16 L. Ed. 2d at 916-17, 86 S. Ct. at 1832-33. Therefore, we decline to apply the logic underlying *Garrity* to the facts of this case in order to determine whether defendant voluntary consented to the breath test.

   Defendant finally contends that the State is precluded from using his breath-test results at trial based on the doctrine of judicial estoppel. Defendant specifically claims that because the

22

1-07-3262

State prosecuted him at a statutory summary suspension hearing based on his initial refusal to submit to the test, the State should be judicially estopped from now seeking to admit the results of the test to which defendant ultimately submitted. We disagree.

We initially note that the trial court did not rule on the issue of judicial estoppel because it suppressed the test results on the ground that the breath sample was taken without defendant's consent. However, we will address the issue in light of our finding that the test results should not have been suppressed.

The doctrine of judicial estoppel provides that a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding. *People v. Caballero*, 206 Ill. 2d 65, 80 (2002). The following elements are required for the doctrine to apply: (1) the party being estopped must have taken two positions; (2) the two positions must be inconsistent; (3) the positions must have been taken in separate judicial or quasi-judicial proceedings; (4) the party must have intended for the trier of fact to accept the truth of the facts alleged; and (5) the party must have succeeded in asserting the first position and received some benefit from it. *Caballero*, 206 Ill. 2d at 80. Application of the doctrine is within the discretion of the court. *Caballero*, 206 Ill. 2d at 80.

The doctrine of judicial estoppel does not apply in this case. First, although the State prosecuted defendant for his initial refusal to submit to the breath test, defendant was ultimately successful in having the statutory summary suspension rescinded. Therefore, the State did not succeed in the first proceeding or receive some benefit from it. *Caballero*, 206 Ill. 2d at 80; *People v. Jones*, 223 Ill. 2d 569, 598-99 (2006).

23

Second, the State has not taken inconsistent positions. In *People v. DuBose*, 348 Ill. App. 3d 992, 994 (2004), the defendant was arrested for DUI and, upon being transported to a local hospital, refused to submit to blood-alcohol testing. Defendant's blood was subsequently taken over his objection pursuant to section 11-501.6(c) of the Vehicle Code, which provides that "'if a driver of a vehicle is receiving medical treatment as a result of a motor vehicle accident, any physician licensed to practice medicine *** shall withdraw blood for testing *** upon the specific request of a law enforcement officer.'" *DuBose*, 348 Ill. App. 3d at 994-95, quoting 625 ILCS 5/11-501.6(b) (West 2000). The defendant's license was suspended based on his refusal to submit to testing and the State subsequently attempted to use the results of the blood test to prosecute defendant for aggravated DUI. *DuBose*, 348 Ill. App. 3d at 994-95. On appeal, the defendant argued that the State was taking inconsistent positions and therefore was judicially estopped from using the results of his blood test at trial. The court noted that the police were statutorily authorized to have defendant's blood drawn without his consent and, therefore, according to the court, the fact that blood testing was performed did not imply that defendant consented to the test and the assertion that defendant refused to voluntarily submit to testing did not imply that no testing was performed. *DuBose*, 348 Ill. App. 3d at 996. Thus, the court found that the State had not taken inconsistent position and that judicial estoppel did not apply. *DuBose*, 348 Ill. App. 3d at 996; see also *People v. Coffin*, 305 Ill. App. 3d 595, 598 (1999) (holding that the State is not judicially estopped from using results of a blood-alcohol test performed on blood sample obtained in a hospital emergency room to prosecute the defendant for DUI, even though the State previously used the defendant's refusal to submit to a blood-alcohol

test to obtain summary suspension of the defendant's driver's license; the positions taken by the State were not factually inconsistent).

In this case, the State sought to have defendant's driver's license suspended pursuant to section 11-501.1 of the Vehicle Code (625 ILCS 5/11-501.1 (West 2006)), based upon his initial refusal to submit to the breath test. That position, however, does not imply that no subsequent testing was performed. The State is now attempting to use the test results that were obtained after defendant ultimately submitted to the test to prosecute him for DUI and aggravated assault. Because defendant's consent is not required for those test results to be admissible at trial, the State's attempt to use the results at trial does not imply that defendant consented to the test. Accordingly, we find that the State has not taken inconsistent positions and that the doctrine of judicial estoppel does not bar the State from using the test results at defendant's trial.

Finally, we note that the State has filed a motion to strike defendant's brief based upon references in the brief's conclusion section to an unrelated DUI prosecution that allegedly occurred in 2002. The State's motion to strike defendant's brief, which was taken with the case, is hereby denied, although we will not consider any references to matters outside of the record. See *People v. Brown*, 249 Ill. App. 3d 986, 994 (1993) (appellate court will not consider matters outside the record).

For the reasons stated, the judgment of the circuit court of Cook County is reversed.

Reversed and remanded.

J. GORDON and CAHILL, JJ., concur.