THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DONALD J. BYNUM, Defendant-Appellant.
Fourth District   No. 4—87—0123

Opinion filed August 24, 1987.

Timothy M. Lucas, of Bernardi & Bode, of Pekin, for appellant.

Greg Roosevelt, State's Attorney, of Lincoln (Kenneth R. Boyle, Robert J. Biderman, and James W. Ackerman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

After a bench trial in the circuit court of Logan County, defendant, Donald J. Bynum, was convicted on December 18, 1986, of the offenses of failure to reduce speed to avoid an accident (Ill. Rev. Stat. 1985, ch. 95½, par. 11—601(a)) and failure to exercise due care to avoid colliding with a bicyclist (Ill. Rev. Stat. 1985, ch. 95½, par. 11—1003.1). On January 23, 1987, the court sentenced him to a fine of $100 and costs. Defendant has appealed contending that the trial court erred in denying his motion to suppress certain statements he had made and in imposing conviction for both offenses, which he maintains to have arisen from the same act. We affirm.

The evidence at the hearing on the motion to suppress showed that, at approximately 2 p.m. on August 18, 1985, defendant, who was a State trooper, was driving an unmarked squad car when it hit a bicycle. Defendant then had a conversation with Master Sergeant Ed Eskra of the State Police in which defendant stated that he had seen a bicyclist on the road but averted his eyes for a minute. He said that when he looked up, the impact occurred. Eskra then had defendant make a written report, which was eventually turned in to Captain Ryan of the State Police. Defendant then had an interview with Ryan, Eskra, and Trooper Terry Ward, an accident reconstructionist, in Springfield on August 28, 1985, which lasted approximately 1½ hours. The admissions made by defendant during these meetings and in his report were the subject of the motion to suppress.

Defendant maintains that the prosecution's use at the trial of the described statements and report violated his fifth amendment rights, because he was required to make the statements and reports by police regulations. He relies upon the case of *Garrity v. New Jersey* (1967), 385 U.S. 493, 17 L. Ed. 2d 562, 87 S. Ct. 616. There, police officers were required by superiors to undergo questioning in re-

gard to the manner in which traffic tickets were being handled. Prior to the questioning, the officers were advised (1) their answers could be used against them; (2) they need not answer; but (3) their failure to answer could result in discharge. Their statements were used against the officers to convict them. The United States Supreme Court ultimately held that the answers given by the officers were involuntary, because the officers were faced with the dilemma of refusing to answer and losing their jobs or answering and incriminating themselves.

Here, police regulations required the defendant to make the report and answer the questions posed by his superiors. Failure to obey a superior officer and failure to comply with the rules was stated to be a ground for disciplinary action. The evidence at the suspension hearing showed that both defendant and his superiors knew that he could be disciplined if he refused to answer and refused to make a report. Accordingly, defendant contends that, under the precedent of *Garrity*, he was entitled to have the statements and reports suppressed. However, *Garrity* has not been given a broad interpretation.

In *United States v. Indorato* (1st Cir. 1980), 628 F.2d 711, *cert. denied* (1980), 449 U.S. 1016, 66 L. Ed. 2d 476, 101 S. Ct. 578, a law enforcement officer had been required by superiors to give a report of his conduct during a period of time and to name an informer from whom he claimed he had obtained information. There, as here, officers were required to obey superiors, they were subject to proceedings if they disobeyed and they were subject to dismissal or other disciplinary action if found to be in violation. That court held that the officer was not under an "overt threat" to be fired for refusal to give information. (628 F.2d 711, 715.) The situation was distinguished from *Garrity*, where a direct threat to fire upon failure to answer was made. Defendant maintains that here, unlike in *Indorato*, there was significant evidence that an officer who disobeys an order to give information would be discharged. We disagree. All such evidence called to our attention indicated that dismissal would be possible but would not necessarily follow. See also *People v. Sigman* (1976), 42 Ill. App. 3d 624, 356 N.E.2d 400.

■ We also disagree with defendant's contention that the two offenses arose from the same act as described in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838. The essence of one offense was the failure to reduce speed. The other offense involved carelessness, which involved the looking away from the road. These acts were not necessarily simultaneous, and the fact that they were closely related in time does not cause them to merge into one act. (66 Ill. 2d 551, 363 N.E.2d 838.) The acts differ from the simultaneous possession of two

controlled substances deemed to constitute one act in *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200.

The judgments appealed are affirmed.

Affirmed.

SPITZ, P.J., and LUND, J., concur.