Coos
No. 2001-045

THE STATE OF NEW HAMPSHIRE

v.

VALERIE LITVIN

Argued: February 13, 2002
Opinion Issued: April 17, 2002

*Philip T. McLaughlin*, attorney general (*N. William Delker*, senior assistant attorney general, and *James D. Rosenberg*, assistant attorney general, on the brief, and *Mr. Delker* orally), for the State.

*Twomey & Sisti Law Offices*, of Lancaster (*Leonard D. Harden* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Valerie Litvin, was found guilty by a jury of theft by unauthorized taking. *See* RSA 637:3 (1996). She appeals, arguing that the Trial Court (*Perkins*, J.) erroneously admitted statements she allegedly made under circumstances that violated her

constitutional right against compelled self-incrimination. *See* U.S. CONST. amends. V, XIV; N.H. CONST. pt. I, art. 15. We affirm.

The relevant facts follow. The defendant was a clerk in the City of Berlin's collection department. In January 1999, her employment was terminated when an investigation revealed that she had signed for and accepted approximately $40,000 from various city departments, but had not credited the accounts of those departments with any of the funds. During the investigation, she met with city officials and was asked about the missing funds. The defendant admitted that she had signed the deposit slips and accepted the funds, but insisted that she did not know what happened to the funds thereafter. Towards the end of the meeting, the defendant was given a form to sign, which provided as follows:

> I am not questioning you for the purpose of instituting a criminal prosecution against you. During the course of this investigation, even if you do disclose information which indicates that you may be guilty of criminal conduct, neither your self-incriminating statements nor the fruits of any self-incriminating statements you make will be used against you in any criminal legal proceedings.
>
> Since this is an administrative matter and any self-incriminating information you may disclose will not be used against you in a criminal case, you are required to answer my questions fully and truthfully. If you refuse to answer my questions, you will be in violation of City policy and shall be subject to disciplinary penalties.

The defendant read and signed the form and was placed on administrative leave until the conclusion of the investigation, when she was terminated.

Following her termination, the defendant was charged with one count of theft by unauthorized taking or transfer for stealing city funds. Before trial, the defendant moved to suppress evidence from the city's investigation on the ground that it stemmed from statements she made to city officials that were allegedly compelled. The trial court denied the motion, ruling that the defendant's statements were not compelled despite her subjective belief that if she failed to cooperate with the city's investigation, she would be fired.

When reviewing a trial court's ruling on a motion to suppress, we defer to its findings of fact but review its conclusions of law *de novo*. *State v. Cotell*, 143 N.H. 275, 282 (1998).

On appeal, the defendant asserts that admission of her statements, and other evidence from the city's investigation, violated her right not to

incriminate herself guaranteed by both the State and Federal Constitutions. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, XIV. Because the Federal Constitution provides no greater protection to the defendant than the State Constitution, we address her claims solely under the State Constitution, citing to federal law only to aid in our analysis. *See State v. Dorval,* 144 N.H. 455, 456 (1999).

The constitutional protection against compelled self-incrimination

> not only permits [the defendant] to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Knowles v. Warden, N.H. State Prison,* 140 N.H. 387, 391 (1995) (quotation omitted). The touchstone of the privilege is compulsion. *See Lefkowitz v. Cunningham,* 431 U.S. 801, 806 (1977).

In *Garrity v. New Jersey,* 385 U.S. 493, 500 (1967), the United States Supreme Court held that statements given under threat of discharge from public employment are compelled and may not be used in subsequent criminal proceedings. In *Garrity,* police officers were questioned by the attorney general regarding allegations of the fixing of traffic tickets. *Id.* at 494. Before they were questioned, each officer was warned that anything he said could be used against him in any state criminal proceeding, that he had a privilege to refuse to answer questions if the disclosure would tend to incriminate him, and that if he refused to answer, he would be "subject to removal from office." *Id.* The officers answered the questions and their answers were used against them in subsequent prosecutions. *Id.* at 495. The Court ruled that the choice given the officers was "either to forfeit their jobs or to incriminate themselves," and that this choice made their statements compelled. *Id.* at 497.

The defendant concedes that she was not expressly threatened with termination if she failed to answer the city's questions. She contends, however, that the threat of disciplinary action and her subjective belief that she would be discharged if she did not cooperate entitled her to the protections of *Garrity.* We disagree.

The First Circuit Court of Appeals has held that in order to trigger *Garrity* protections, a defendant must have been threatened with automatic dismissal for failing to cooperate and that the defendant's subjective belief that he or she would be dismissed does not render his or her statements compelled. *See United States v. Indorato,* 628 F.2d 711 (1st Cir. 1980), *cert. denied,* 449 U.S. 1016 (1980).

In *Indorato*, the court ruled that statements made by a state police lieutenant to his superiors during an investigation were not coerced, despite his fear that if he refused to answer questions he would be dismissed, and even though department rules provided for dismissal of any officer for refusing to obey the lawful order of a superior. The court found that the defendant neither had been overtly threatened with dismissal nor asked to waive his immunity. *Id.* at 717. The court further found that, while the department rules permitted dismissal, they did not require dismissal of an officer for failing to obey a superior. *Id.* at 716. And, the court noted that the defendant did not claim the privilege. *Id.* at 717. The court ruled that in the absence of an overt threat or a law requiring dismissal under the circumstances, it would not find the statements compelled. *Id.* at 716. The court further ruled that "the subjective fears of [a] defendant as to what might happen if he refused to answer his superior officers are [not] sufficient to bring him within *Garrity*'s cloak of protection." *Id.*

■ In this case, the defendant, like the defendant in *Indorato*, did not assert her right not to answer questions. More importantly, she was not threatened with automatic job loss. The city's policy, like the department policy at issue in *Indorato*, permitted dismissal for "insubordination," but did not require it. The defendant's subjective fear that she would be fired if she failed to answer the city's questions does not entitle her to *Garrity* protections.

The facts of this case are similar to those in *Singer v. State of Maine*, 49 F.3d 837 (1st Cir. 1995). In *Singer*, the defendant was a state tax examiner who was questioned by her supervisors at the state bureau of taxation. *Id.* at 838, 842-43. At an investigatory meeting, she was told that the meeting pertained to work-related misconduct, not to a criminal investigation. *Id.* at 842. She was also told that "it would be to her advantage" to answer questions, but she was not advised of nor asked to waive her Fifth Amendment privilege against self-incrimination. *Id.* at 843. She also was not advised that she would be fired if she refused to answer questions. *Id.* During the meeting, the tax examiner refused to answer various of the bureau's questions, and was fired soon thereafter for, among other things, failing to acknowledge workplace misconduct. *Id.* The court concluded that the defendant's statements were not compelled. *Id.* at 848. Unlike the plaintiffs in the *Garrity* line of cases, she "was not put between the rock and the whirlpool." *Id.* at 847 (quotations omitted). Instead, "she was standing safely on the bank of the stream." *Id.* (quotations omitted); *see also United States v. Stein*, 233 F.3d 6 (1st Cir. 2000), *cert. denied*, 532 U.S. 943 (2001) (attorney's testimony before Massachusetts Board of Bar Overseers was not coerced merely because she feared disbarment where,

according to board's own rules, disbarment would not result automatically for failure to testify).

The defendant's reliance upon *National Labor Relations Board. v. Steinerfilm, Inc.*, 669 F.2d 845 (1st Cir. 1982), is misplaced as it does not concern a defendant's right to be free of compelled self-incrimination.

The defendant argues that even though she did not assert her privilege against self-incrimination, under *Garner v. United States*, 424 U.S. 648 (1976), she may still be protected by the privilege if her statements were compelled. In light of our ruling, we need not address this argument nor the defendant's remaining argument that the statements erroneously were used against her at trial.

Any arguments the defendant raised in her notice of appeal, but did not brief, are deemed waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Affirmed.*

BRODERICK, J., sat for oral argument but did not take part in the final vote; BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.