No. 3-09-0524 consolidated with Nos. 3-09-0525 and 3-09-0526

Filed April 1, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court for the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellant, | ) | |
| v. | ) | 09-CF-292; 09-CF-293; 09-CF-364 |
| ANDREW SMITH, | ) | |
| Defendant-Appellee, | ) | The Honorable Michael E. Brandt Judge, Presiding. |
| AND | ) | |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Appellee, | ) | |
| v. | ) | |
| ANDREW R. SMITH, | ) | |
| Appellant, | ) | |
| AND | ) | |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Appellee, | ) | |
| v. | ) | |

GERALD SUELTER,                              )
                                             )
            Appellant,                       )
                                             )
      AND                                    )
                                             )
THE PEOPLE OF THE STATE OF  )
ILLINOIS,                                    )
                                             )
            Appellee,                        )
                                             )
      v.                                     )
                                             )
JEREMY LAYMAN,                               )
                                             )
            Appellant.                       )

_____

      JUSTICE McDADE delivered the opinion of the court:
_____

      This is an appeal from the trial court's order to partially quash a subpoena *duces tecum*

served upon the Peoria police department (PPD).  We affirm.

FACTS

      Defendants Andrew Smith, Gerald Suelter and Jerry Layman (collectively defendants) are

officers in the PPD.  Smith and Suelter were charged by an indictment with four counts of

official misconduct, aggravated battery, mob action, and battery.  The indictment alleged that

Smith and Suelter shocked Bryce Scott with a taser and struck him with their feet.  Layman was

charged by an indictment with four counts of obstructing justice and one count of official

misconduct.

      The PPD conducted its own internal investigation of the Scott incident.  Prior to giving

their statements, Smith, Suelter and Laymen each signed an individual form entitled "Garrity

2

Warnings." The form had been prepared by the PPD's Office of Professional Standards and was presented to them by officers in that office. Each form stated:

"On February 5, 2009, *** at Peoria Police Department, I was ordered to submit this report by Sgt. Michael Boland. I submit this report (give statement) at his order as a condition of employment. In view of possible job forfeiture, I have no alternative but to abide by this order.

It is my belief and understanding that the department requires this report (statement) solely and exclusively for internal purposes and that this report (statement) will not and cannot be used against me by this department in any subsequent proceedings other than disciplinary proceedings within the confines of the department itself.

For any and all other purposes, I hereby reserve my constitutional right to remain silent under the FIFTH and FOURTEENTH AMENDMENTS to the UNITED STATES CONSTITUTION and other rights prescribed by law. Further, I rely specifically upon the protection afforded me under the doctrines set forth in *Garrity v. New Jersey*, 385 U.S. 493 (1967), and *Spevack v. Klein*, 385 U.S. 511 (1967), should this report (statement) be used for any other purpose whatsoever."

On April 3, 2009, the State served a subpoena *duces tecum* upon the PPD. The subpoena

3

sought any and all statements made by PPD officers in the course of the PPD's internal investigation of the Scott incident. The State specifically sought any police reports or statements made by defendants. The State also requested any police reports or statements made by Officers James Krider, Conor Wowra and Tim Wright.

The city of Peoria (the city) filed a motion to quash the subpoena *duces tecum*. The motion asserted that the documents requested in the State's subpoena *duces tecum* were protected against disclosure under *Garrity v. New Jersey*, 385 U.S. 493, 17 L. Ed. 2d 562, 87 S. Ct. 616 (1967). Suelter also filed his own individual motion to quash relying on *Garrity*. Layman filed a motion to adopt the city's motion. Smith submitted a written memorandum of law in support of his argument that the city's motion should be granted.

On April 23, 2009, a hearing was held on the motions to quash. The hearing consisted only of arguments and colloquy among counsel; no witnesses testified. Ultimately, the trial court ordered that the statements be turned over to the court for examination of the statements before ruling on the motions to quash.

On May 15, 2009, the trial court issued a written order granting the city's motion and Suelter's motion to quash the subpoena with regard to any statements by defendants. The court further held that any statements by other PPD officers not charged with a crime were not subject to this order quashing the subpoena.[1] Specifically, the order stated, in pertinent part:

> "The [defendants'] statements tendered are clearly subject to ***
>
> *Garrity*. 'Garrity warnings' were given to each prior to the

[1] Although the city of Peoria moved for reconsideration of this finding, it has not been appealed and the ruling with regard to other police officers' statements is not before us.

4

statement. Thus, the defendants have a 5th Amendment right that neither statement, nor the fruit of the statement, may be used against the officer in any criminal proceeding."

ANALYSIS

The sole question before us is whether the trial court erred in quashing the State's subpoena *duces tecum* on the basis that defendants' statements were protected against disclosure under *Garrity v. New Jersey*, 385 U.S. 493, 17 L. Ed. 2d 562, 87 S. Ct. 616 (1967). In coming to this conclusion, the court relied upon the "Garrity Warnings" that each defendant signed. On appeal, however, the State argues that the "Garrity Warnings" standing alone are insufficient to support the court's finding that *Garrity* immunity applies. The State requests that the court's judgment be reversed and the matter remanded for a *United States v. Friedrick*, 842 F.2d 382 (D.C. Cir. 1988) hearing on the voluntariness of the statements.

At the outset, we clarify the basis of our jurisdiction. Smith contends that this court does not have jurisdiction to review the trial court's judgment because the defendants' statements were not discoverable and were not evidence that could be presented to the trier of fact. We disagree.

Supreme Court Rule 604(a)(1) allows the State to obtain review of an "order or judgment the substantive effect of which results in *** suppressing evidence." 210 Ill. 2d R. 604(a)(1). "For the purposes of this aspect of Rule 604(a)(1), there is no substantive distinction between evidence that is 'excluded' and evidence that is 'suppressed.' " *People v. Drum*, 194 Ill. 2d 485, 491, 743 N.E.2d 44, 47 (2000). Thus, the pertinent question in determining whether jurisdiction exists under Rule 604(a)(1) is whether the order, in fact, is one that suppresses or excludes evidence. *Drum*, 194 Ill. 2d at 491, 743 N.E.2d at 47. In making this determination, we look to

5

the substantive effect of the order rather than its form. *Drum*, 194 Ill. 2d at 489, 743 N.E.2d at 46.

The trial court in *Drum* rejected the State's request to admit the prior testimony of two witnesses who indicated they would not testify at the defendant's trial. In reversing the trial court's judgment, the supreme court held that evidence is "suppressed" within the meaning of Rule 604(a)(1) when the trial court's order "prevents [the] information from being presented to the fact finder." *Drum*, 194 Ill. 2d at 492, 743 N.E.2d at 48.

The trial court's order here has the same effect that the trial court's order in *Drum* had. Specifically, it prevents defendants' statements from being presented to the fact finder. While Smith calls our attention to the supreme court's holding in *People v. Truitt*, 175 Ill. 2d 148, 676 N.E.2d 665 (1997), we find it distinguishable for the reasons articulated in *Drum*. The *Drum* court stated:

> "This court in *Truitt* concluded that the State could not appeal from a pretrial order regarding how it would be required to prove that certain material was an illegal controlled substance. The *Truitt* court reasoned that the pretrial order did not prevent any information from being presented to the jury. Rather, the sole impact of the order was on the means by which that information was presented." *Drum*, 194 Ill. 2d at 492, 743 N.E.2d at 48.

Because the State is permitted to take an interlocutory appeal from all trial court orders that substantially impair its prosecution of a case by preventing the information from being presented to the fact finder, we find the trial court's order quashing the State's subpoena *duces*

*tecum* to be an appealable order under Rule 604(a)(1). We now turn to the merits of the State's appeal and begin with a careful review of the relevant caselaw

In *Garrity*, several police officers were the target of an investigation concerning the fixing of traffic tickets. Before being questioned, each officer was warned (1) that anything he said might be used against him in any state criminal proceeding; (2) that he had the privilege to refuse to answer if the disclosure would tend to incriminate him; but (3) that if he refused to answer he would be subject to removal from office. The officers answered the questions; however, some of their answers were subsequently used in criminal proceedings against them. The officers were convicted and appealed on the grounds that their statements were coerced, by reason of the fact that, if they refused to answer, they could lose their positions with the police department. In agreeing with the officers, the United States Supreme Court stated:

> "The choice given [the officers] was either to forfeit their
> jobs or to incriminate themselves. The option to lose their means
> of livelihood or to pay the penalty of self-incrimination is the
> antithesis of free choice to speak out or to remain silent. That
> practice, like interrogation practices we reviewed in *Miranda v.*
> *Arizona,* 384 U.S. 436, 464-465, is 'likely to exert such pressure
> upon an individual as to disable him from making a free and
> rational choice.' We think the statements were infected by the
> coercion inherent in this scheme of questioning and cannot be
> sustained as voluntary under our prior decisions." *Garrity*, 385
> U.S. at 497-98, 17 L. Ed. at 565-66, 87 S. Ct. at 618-19.

7

The Supreme Court ultimately concluded that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic." *Garrity*, 385 U.S. at 500, 17 L. Ed. at 567, 87 S. Ct. at 620.

Since the Supreme Court's decision in *Garrity*, federal and state courts asked to apply its holding to the facts before them have developed two distinct lines of authority. The first line of authority stems from *United States v. Indorato*, 628 F.2d 711 (1st Cir. 1980), and holds that *Garrity* immunity will be applied only in situations where the record reveals an explicit or overt threat of mandatory termination for a failure to answer questions. See *State v. Litvin*, 147 N.H. 606, 794 A.2d 806 (2002); *People v. Coutu*, 235 Mich. App. 695, 599 N.W.2d 556 (1999); *People v. Bynum*, 159 Ill. App. 3d 713, 512 N.E.2d 826 (1987); *Commonwealth v. Harvey*, 397 Mass. 351, 491 N.E.2d 607 (1986).

The police officer in *Indorato* was questioned by both a superior officer and the Federal Bureau of Investigation (FBI). The officer was subsequently convicted of several criminal offenses including perjury. On appeal, the officer, relying upon *Garrity*, claimed that his statements were coerced and inadmissable. In rejecting the officer's claim of *Garrity* immunity, the court stated:

> "In this case, there was no explicit 'or else' choice and no
> statutorily mandated firing is involved. We do not think that the
> subjective fears of defendant as to what might happen if he refused
> to answer his superior officers are sufficient to bring him within

8

*Garrity*'s cloak of protection. ***

* * *

Here, [the officer] did not claim the privilege. He was not told that he would be dismissed if he failed to answer the questions asked. He was not asked to sign a waiver of immunity. There was no statute mandating dismissal for refusal to answer hanging over his head. [The officer], here, was not, as in *Garrity*, put 'between the rock and the whirlpool,' [citation]; he was standing safely on the bank of the stream." *Indorato*, 628 F.2d at 716-17.

The second line of authority evolved from *United States v. Friedrick*, 842 F.2d 382 (D.C. Cir. 1988), and holds that *Garrity* immunity will be applied in situations where the officer has a subjective belief that he will be fired for refusing to answer questions and that belief is objectively reasonable under the circumstances. See *McKinley v. City of Mansfield*, 404 F.3d 418 (6th Cir. 2005); *United States v. Vangates*, 287 F.3d 1315 (11th Cir. 2002); *State v. Chavarria*, 2001-NMCt-095, 131 N.M. 172, 33 P.3d 922; *People v. Sapp*, 934 P.2d 1367, (Colo. 1997). Thus, courts applying the *Friedrick* line of authority have determined that *Garrity* immunity may apply even where the threat of termination is implied rather than explicit or overt.

The issue in *Friedrick* was whether the immunity, which an FBI agent was previously granted in prior interviews, continued into the interview where he made incriminating statements. On appeal, the court found that *Garrity* immunity would apply if the agent believed that his statements were being compelled by threat of losing his job and that this belief was objectively reasonable under the circumstances. *Friedrick*, 842 F.2d at 395. Thus, *Friedrick* held that

9

*Garrity* immunity may apply even where the threat of termination is implied rather than explicit or overt.  *Friedrick*, 842 F.2d at 395.

The *Bynum* court appears to be the only Illinois court that has had the opportunity to analyze *Garrity* in light of these precise facts.[2]  At the outset, we note that *Bynum* was decided one year before *Friedrick*.  The police officer in *Bynum* was driving an unmarked squad car when it hit a bicyclist.  The officer was later interviewed by a sergeant, a captain, and an accident reconstructionist.  During the interviews the officer made several admissions regarding the incident.  The officer was subsequently convicted for failure to reduce speed to avoid and accident and failure to exercise due care to avoid colliding with a bicyclist.  The officer appealed, arguing that the State's use at trial of his previous admissions violated his fifth amendment rights, because he was required to make the statements and reports by police regulations.  The Fourth District relied on *Indorato* in finding that *Garrity* had "not been given a broad interpretation."  *Bynum*, 159 Ill. App. 3d at 715, 512 N.E.2d at 827.  Specifically, the court stated:

> "[The officer] maintains that here, unlike in *Indorato*, there was
> significant evidence that an officer who disobeys an order to give
> information would be discharged.  We disagree.  All such evidence

---

[2] We are aware of the First District's holding in *People v. Carey*, 386 Ill. App. 3d 254, 898 N.E.2d 1127 (2008).  *Carey*, however, is distinguishable on the grounds that it did not involve testimonial or communicative evidence.  Instead, the *Carey* court declined to apply the logic underlying *Garrity* to determine whether the defendant voluntarily consented to a breath-alcohol test.  *Carey*, 386 Ill. App. 3d at 268, 898 N.E.2d at 1141.

10

called to our attention indicated that dismissal would be possible but would not necessarily follow." *Bynum*, 159 Ill. App. 3d at 715, 512 N.E.2d at 827.

Here on appeal, the State requests that we "adopt the two-prong test articulated in *Friedrick*." Having examined the foregoing authority, however, we conclude that it is unnecessary for the purpose of deciding this case to adopt either the two-pronged *Friedrick* test or the more narrow interpretation announced in *Indorato*. Instead, we believe the holding in *Garrity* is itself dispositive of the question before us.

The "Garrity Warnings," which were signed by each defendant, clearly assert that defendants were given the choice to "either forfeit their jobs or to incriminate themselves." *Garrity*, 385 U.S. at 497, 17 L. Ed. at 565, 87 S. Ct. at 618. In coming to this conclusion, we emphasize the following language: (1) "I was ordered to submit this report by Sgt. Michael Boland," (2) "I submit this report (give statement) at his order as a condition of employment," and (3) "I have no alternative but to abide by this order."[3] While we acknowledge the reference to "*possible* job forfeiture" (emphasis added), we do not believe that these three words alone act to defeat the overall intent of the "Garrity Warnings." Instead, we find that the "Garrity Warnings," when read as a whole, reveal that defendants were faced with the option of either incriminating themselves or losing their means of livelihood. *Garrity*, 385 U.S. at 497, 17 L. Ed.

---

[3] At no point in this case's odyssey has the State challenged the propriety of any of the specific claims contained within the "Garrity Warnings." Instead, the State merely contends that the "Garrity Warnings," standing alone, are insufficient to support a finding that *Garrity* immunity exists.

11

at 565, 87 S. Ct. at 618. These defendants did not give their statements in an unfettered exercise of free will, but rather to avoid a clearly expressed penalty for choosing to remain silent. Statements given under such coercion cannot be sustained as voluntary. *Garrity*, 385 U.S. at 497, 17 L. Ed. at 565, 87 S. Ct. at 618. Moreover, we note that defendants expressly reserved, in all circumstances other than the internal investigation and any resulting disciplinary proceedings, their constitutional right to remain silent and any protections afforded under *Garrity*. Consequently, we find that the "Garrity Warnings" standing alone are sufficient to support the application of *Garrity* immunity.

For the foregoing reasons, we affirm the trial court's judgment quashing the State's subpoena *duces tecum* with regard to any statements by defendants.

Affirmed.

HOLDRIDGE, P.J., and LYTTON, J., concur.