THIRD DIVISION
October 13, 2010

1-09-3353 ) APPEAL FROM THE
) CIRCUIT COURT OF
THE PEOPLE OF THE STATE OF ILLINOIS, ) COOK COUNTY
Plaintiff-Appellant, )
)
v. ) No. 08 CR 7115
)
) HONORABLE
JOHN HALEAS, ) JAMES M. OBBISH,
Defendant-Appellee. ) JUDGE PRESIDING.


JUSTICE STEELE  delivered the opinion of the court:

Plaintiff, the State of Illinois, appeals two orders of the circuit court of Cook County

suppressing a statement defendant, Chicago police officer John Haleas, gave the Chicago Police

Department's Internal Affairs Division (IAD) and dismissing an indictment against Officer Haleas

for official misconduct, obstructing justice and perjury.  For the following reasons, we affirm in

part, vacate in part and remand the case for further proceedings.

BACKGROUND

The record on appeal discloses the following facts.  On April 9, 2005, Officer Haleas was

called to investigate a possible case of driving under the influence (DUI) at 1534 North Laramie in

Chicago.  Two prosecutors accompanied Officer Haleas on a "ride-along" as part of their

assignment to traffic court.  Officer Haleas became involved in the investigation and arrest of

Edward Beck on the charge of DUI.

On May 17, 2005, IAD launched an investigation into the circumstances of Beck's arrest.

The prosecutors from the ride-along accused Officer Haleas of failing to: (1) give Beck the proper

warning; (2) observe Beck for 20 minutes before administering the breath test; and (3) administer

the standard field sobriety test as shown in the reports of Beck's arrest. IAD assigned the investigation to Sergeant James P. Cradick, who interviewed the prosecutors and the police officers who had Beck in custody when Officer Haleas arrived at the scene.

On November 7, 2005, Officer Haleas was served with a notification of administrative rights in the IAD investigation, advising him of the following:

"1. Any admission or statement made by you in the course of this hearing, interrogation or examination may be used as the basis of your suspension or as the basis for charges seeking your removal or discharge or suspension in excess of 30 days.

2. You have the right to counsel of your choosing to be present with you to advise you at this hearing, interrogation or examination and you may consult with him as you desire.

3. You have a right to be given a reasonable time to obtain counsel of your choosing.

4. You have no right to remain silent. You have an obligation to truthfully answer questions put to you. You are advised that your statements or responses constitute an official police report.

5. If you refuse to answer questions put to you, you will be ordered by a superior officer to answer the questions.

6. If you persist in your refusal after the order has been given to you, you are advised that such refusal constitutes a violation of the Rules and Regulations of the

Chicago Police Department and will serve as a basis for which your discharge will be sought.

7. You are further advised that by law any admission or statement made by you during the course of this hearing, interrogation or examination and the fruits hereof cannot be used against you in a subsequent criminal proceeding."

Officer Haleas was also advised of the complainants and allegations against him. The same day, Officer Haleas, represented by counsel, gave a statement about the case to Sergeant Cradick. Officer Haleas prefaced his statement with the comment that he was not making the statement voluntarily, but only because he knew he could lose his job if he refused.

On March, 22, 2006, Sergeant Cradick concluded his investigation, recommending a five day suspension. Sergeant Cradick's superiors did not concur in the recommendation, based in part on purported inconsistencies in the prosecutors' statements and in part on Officer Haleas's experience and record in DUI arrests. Debra Kirby, the assistant deputy superintendent of IAD, recommended a one-day suspension, agreeing with Sergeant Cradick's sustained finding that Officer Haleas did not perform the standardized field sobriety test on Edward Beck. Ultimately, Officer Haleas was suspended for one day on July 30, 2007.

On April 4, 2008, the State obtained an indictment against Officer Haleas for official misconduct, obstructing justice, and perjury in the arrest of Edward Beck. On July 10, 2008, the State tendered discovery to defense counsel, including Officer Haleas's IAD statement. On October 30, 2008, Officer Haleas moved to suppress his statement and dismiss the indictment, arguing that his statement was involuntary under Garrity v. New Jersey, 385 U.S. 493, 500, 17 L.

Ed. 2d 562, 567, 87 S. Ct. 616, 620 (1967), and that the State improperly used the statement to obtain the indictment under Kastigar v. United States, 406 U.S. 441, 461-62, 32 L. Ed. 2d 212, 227, 92 S. Ct. 1653, 1665 (1972).

On April 28, 2009, following briefing and a hearing on the matter, the trial court granted the motion to suppress Officer Haleas's IAD statement, ruling that there was a violation of Garrity. The trial court also indicated the matter would be set for a hearing on the issue of whether the indictment would be dismissed under Kastigar. On May 5, 2009, the State moved for reconsideration. On June 25, 2009, the trial court denied the State's motion to reconsider.

On August 27, 2009, the trial court held a hearing on whether the indictment would be dismissed under Kastigar. The State adduced testimony from Sergeant Cradick and Assistant State's Attorney (ASA) David Navarro. Sergeant Cradick testified regarding the IAD investigation. According to Sergeant Cradick, his report on the case was returned with notes to reinterview the prosecutors who were on the ride-along to ascertain their location when Officer Haleas administered the Breathalyzer test and to determine whether they were able to see the test. Sergeant Cradick interviewed the prosecutors again on January 24 and 27, 2006. Sergeant Cradick stated that he did not mention Officer Haleas's statement to either of the prosecutors.

Sergeant Cradick also testified that in late 2007, he was contacted by ASA Navarro regarding the criminal investigation of Officer Haleas. Sergeant Cradick testified that he gave ASA Navarro a summary of the IAD investigation, including a summary of what Officer Haleas said in the IAD statement, i.e., that he denied the allegations against him.

ASA Navarro testified that Sergeant Cradick did not tell him about the IAD statement. Indeed, ASA Navarro testified that he advised Sergeant Cradick not to tell him about the IAD statement. ASA Navarro also testified it is the policy of the Cook County State's Attorney's office that Garrity does not apply to Chicago Police Department officer statements, but that his comments to Sergeant Cradick were made out of an "abundance of caution."

ASA Navarro further testified that in December 2007, he received a redacted version of the IAD complaint register file (CR file), which did not contain Officer Haleas's IAD statement or any information about that statement. ASA Navarro stated that he interviewed Edward Beck, as well as the people Beck said he was with at the time of the traffic stop. ASA Navarro testified that he spoke to the prosecutors who went on the ride-along, but only to let them know an investigation was ongoing; he did not discuss Officer Haleas's statement with them. ASA Navarro also testified that he spoke with Officers Erin Hall and Kevin Carlquist before presenting their testimony to the grand jury, but he did not speak with them about Officer Haleas's statement.

According to ASA Navarro, he did not review the complete CR file, including Officer Haleas's statement, until after Officer Haleas moved to suppress it. ASA Navarro further stated that he was asked approximately 10 days before the Kastigar hearing to produce the redacted CR file, but was unable to do so. ASA Navarro stated that the public corruption unit moved after his departure in March 2009 and that a search of both offices failed to reveal the redacted file.

Following argument from counsel, the trial court granted the motion to dismiss the indictment. The trial court reasoned that the State had failed to carry its burden of showing that it made no meaningful use of the IAD statement. The trial court concluded that the State's

witnesses had been exposed to Officer Haleas's version of events. The trial court also noted the conflicting testimony regarding ASA Navarro's exposure to the IAD statement and the State's inability to produce a redacted version of the CR file. The State filed a timely notice of appeal to this court.

DISCUSSION

I

On appeal, the State first argues that the trial court erred in granting Officer Haleas's motion to suppress. When we review a trial court's ruling on a motion to suppress a confession, findings of fact and credibility determinations are accorded great deference and will not be reversed unless they are against the manifest weight of the evidence. People v. Braggs, 209 Ill. 2d 492, 505, 810 N.E.2d 472, 481 (2003). However, the ultimate question of whether the trial court erred in ruling that the confession was voluntary is a legal question, which we review de novo. Braggs, 209 Ill. 2d at 505, 810 N.E.2d at 481.

The fifth amendment states that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County, 542 U.S. 177, 189, 159 L. Ed. 2d 292, 305, 124 S. Ct. 2451, 2460 (2004). In this case, neither party disputes the testimonial nature of Officer Haleas's IAD statement, focusing instead on whether the IAD statement is compelled and incriminating. We address these issues in turn.

1-09-3353

The protections of the fifth and fourteenth amendments against coerced statements prohibit use in subsequent criminal proceedings of statements obtained from police officers under threat of removal from office. Garrity v. New Jersey, 385 U.S. 493, 500, 17 L. Ed. 2d 562, 567, 87 S. Ct. 616, 620 (1967). However, in Garrity, state law mandated discharge of police officers who invoked their privilege against self-incrimination. Garrity, 385 U.S. at 494 n.1, 17 L. Ed. 2d at 564 n.1, 87 S. Ct. at 617 n.1. Since the United States Supreme Court's decision in Garrity, federal and state courts have reached different conclusions about its application to cases where the threat of removal from office is less certain.

For example in People v. Bynum, 159 Ill. App. 3d 713, 512 N.E.2d 826 (1987), the Fourth District of this court, persuaded by United States v. Indorato, 628 F.2d 711 (1st Cir. 1980), held that Garrity immunity will be applied only in situations where the record reveals an explicit or overt threat of mandatory termination for a failure to answer questions, not in cases where the officer may be disciplined, but removal from office is not certain. Bynum, 159 Ill. App. 3d at 715, 512 N.E.2d at 827; see also State v. Litvin, 147 N.H. 606, 794 A.2d 806 (2002); People v. Coutu, 235 Mich. App. 695, 599 N.W.2d 556 (1999); Commonwealth v. Harvey, 397 Mass. 351, 491 N.E.2d 607 (1986); People v. Sigman, 42 Ill. App. 3d 624, 356 N.E.2d 400 (1976).

A second line of authority, evolving from United States v. Friedrick, 842 F.2d 382 (D.C. Cir. 1988), holds that Garrity immunity will be applied in situations where the officer has a subjective belief that he will be fired for refusing to answer questions and that belief is objectively reasonable under the circumstances. See McKinley v. City of Mansfield, 404 F.3d 418 (6th Cir.

2005); United States v. Vangates, 287 F.3d 1315 (11th Cir. 2002); State v. Chavarria, 2001-NMCA-095, 131 N.M. 172, 33 P.3d 922; People v. Sapp, 934 P.2d 1367 (Colo. 1997). These decisions have determined that Garrity immunity may apply even where the threat of termination is implied rather than explicit or overt.

In People v. Smith, 399 Ill. App. 3d 534, 926 N.E.2d 452 (2010), the Third District reviewed this case law, noting that Bynum was decided a year before Friedrick. Smith, 399 Ill. App. 3d at 540, 926 N.E.2d at 457. Although the Third District was urged to adopt Friedrick, the court found it unnecessary to adopt that approach or the narrower approach of Indorato and its progeny. Smith, 399 Ill. App. 3d at 540, 926 N.E.2d at 457. Instead, the Smith court reasoned that the overall intent of the Garrity warnings given to the police, standing alone and when read as a whole, revealed that defendants were faced with the option of either incriminating themselves or losing their means of livelihood. Smith, 399 Ill. App. 3d at 540-41, 926 N.E.2d at 457-58. The Smith court reasoned:

> "These defendants did not give their statements in an unfettered exercise of free will, but rather to avoid a clearly expressed penalty for choosing to remain silent. Statements given under such coercion cannot be sustained as voluntary. Garrity, 385 U.S. at 497, 17 L. Ed. 2d at 565, 87 S. Ct. at 618. Moreover, we note that defendants expressly reserved, in all circumstances other than the internal investigation and any resulting disciplinary proceedings, their constitutional right to remain silent and any protections afforded under Garrity. Consequently, we find that the 'Garrity Warnings' standing alone are sufficient to

support the application of Garrity immunity. Smith, 399 Ill. App. 3d at 541, 926 N.E.2d at 458.

Notably, the court reached this conclusion despite the fact that the warning form in question referred to " 'possible job forfeiture.' " (Emphasis omitted.) Smith, 399 Ill. App. 3d at 541, 926 N.E.2d at 457.

We are persuaded by the reasoning of the Smith court. In assessing voluntariness of a defendant's statement, courts routinely consider whether the defendant was subject to threats, deceit or promises by the government. E.g., People v. Clarke, 391 Ill. App. 3d 596, 615, 915 N.E.2d 1, 18 (2009). In many cases, these issues are contested. Here, however, the threat that discharge will be sought for noncooperation is in writing, as is the promise that any statement (and the fruits thereof) cannot be used in any subsequent criminal proceeding. Indeed, to all appearances, the entire point of issuing the Garrity warnings is to compel a statement from the subject of the investigation. Accordingly, the trial court did not err in ruling that Officer Haleas's statement was compelled.

In its motion for reconsideration of the Garrity issue, the State raised the argument that the IAD statement was not incriminating. On appeal, the State argues not only that the statement is not incriminating, but also that Officer Haleas does not have a right to lie in the statement he gave to the IAD.

The latter suggestion requires little discussion. The United States Supreme Court has long held that the question of coercion under the self-incrimination clause "[is] to be answered with complete disregard of whether or not [the accused] in fact spoke the truth." Rogers v. Richmond,

1-09-3353

365 U.S. 534, 544, 5 L. Ed. 2d 760, 768, 81 S. Ct. 735, 741 (1961).

As for the exculpatory nature of the IAD statement, the United States Supreme Court has defined "incrimination" broadly to encompass not only "answers that would in themselves support a conviction *** but likewise *** those which would furnish a link in the chain of evidence needed to prosecute the [defendant]." Hoffman v. United States, 341 U.S. 479, 486, 95 L. Ed. 1118, 1124, 71 S. Ct. 814, 818 (1951). "Compelled testimony that communicates information that may 'lead to incriminating evidence' is privileged even if the information itself is not inculpatory." United States v. Hubbell, 530 U.S. 27, 38, 147 L. Ed. 2d 24, 37, 120 S. Ct. 2037, 2044 (2000), quoting Doe v. United States, 487 U.S. 201, 208 n.6, 101 L. Ed. 2d 184, 195 n.6, 108 S. Ct. 2341, 2346 n.6 (1988); see also Kastigar, 406 U.S. at 445, 32 L. Ed. 2d at 217, 92 S. Ct. at 1656 (fifth amendment privilege against self-incrimination "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used" (emphasis added)).

In denying the State's motion for reconsideration, the trial court rejected the State's argument that the IAD statement was not incriminating. The trial court found the IAD statement, which gives Officer Haleas's version of the events at issue, could be used by the State in questioning its own witnesses to develop evidence against Officer Haleas. Indeed, the record in this case shows that the IAD appears to have made use of the statement in its own investigation. Given the IAD statement could lead to evidence of the sort that could be used in a criminal prosecution of Officer Haleas, we conclude that the trial court did not err in rejecting the State's argument on reconsideration.

-10-

1-09-3353

In sum, we conclude the trial court did not err in suppressing Officer Haleas's IAD statement.

II

Next, the State argues on appeal that the trial court erred in dismissing the indictment under Kastigar and its progeny. In Kastigar, the United States Supreme Court upheld the constitutionality of a federal immunity statute because it concluded that the statute provided immunity that was coextensive with fifth amendment protections. Kastigar, 406 U.S. at 462, 32 L. Ed. 2d at 227, 92 S. Ct. at 1666. The Kastigar Court further ruled that, once a defendant demonstrates that he or she has testified under a grant of immunity to matters related to the prosecution, the prosecutor has the burden of showing that its evidence is not tainted by showing it had a legitimate source for the disputed evidence wholly independent of the compelled testimony. Kastigar, 406 U.S. at 460, 32 L. Ed. 2d at 226, 92 S. Ct. at 1665.

This case does not involve a statutory immunity, but a statement ruled involuntary pursuant to Garrity. As the court observed in United States v. Slough, 677 F. Supp. 2d 112, 132-33 (D.D.C. 2009):

"[A]lthough Garrity does not expressly invoke the protections of Kastigar, every circuit to have addressed the issue has held that 'a government employee who has been threatened with an adverse employment action by her employer for failure to answer questions put to her by her employer receives immunity from the use of her statements or their fruits in subsequent criminal proceedings,' Sher v. Dep't of Veterans Affairs, 488 F.3d 489, 501-02 & n. 12 (1st Cir. 2007); In re Grand Jury Proceedings (Kinamon), 45

-11-

F.3d 343, 348 (9th Cir. 1995) (holding that statements obtained from an employee who was required to answer questions under a threat of dismissal were subject to use and derivative use immunity); In re Grand Jury Subpoenas (Stover), 40 F.3d 1096, 1102-03 (10th Cir. 1994) (observing that 'Garrity's protection ... acts to immunize ... compelled statements, as it prohibits their subsequent use against the officer so as not offend the Fifth Amendment Privilege' and that this prohibition 'provides a comprehensive safeguard, barring the use of compelled testimony as an "investigatory lead," and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures') (quoting Kastigar, 406 U.S. at 460, [32 L. Ed. 2d at 226,] 92 S. Ct. [at 1664-65]); In re Grand Jury Proceedings (Cohen), 975 F.2d 1488, 1490 (11th Cir. 1992) (observing that '[i]mmunity under Garrity prevents any statements made in the course of the internal investigation from being used against the officers in subsequent criminal proceedings'); Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation of the City of N.Y., 426 F.2d 619, 626 (2d Cir.1970) (stating that in Garrity, 'the very act of the attorney general in telling the witness that he would be subject to removal if he refused to answer was held to have conferred ... immunity').

Furthermore, courts have uniformly held that 'if a criminal defendant ... demonstrates that she was compelled to testify by her government employer, "the government must show that any evidence used or derived has a legitimate source wholly independent of the compelled testimony." ' United States v. Moten, 551 F.3d 763, 766 (8th Cir. 2008) (quoting Kastigar, 406 U.S. at 460, [32 L. Ed. 2d at 226,] 92 S. Ct. [at

1665]); In re Grand Jury, Doe, 478 F.3d 581, 583-84 (4th Cir. 2007) (noting that if a police officer believed statements compelled under Garrity 'were used to indict him, he would be entitled to a Kastigar hearing, at which the government would bear the burden of "prov[ing] that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony" ') (quoting Kastigar, 406 U.S. at 441, [32 L. Ed. 2d at 226,] 92 S. Ct. [at 1665]); Kinamon, 45 F.3d at 348 (ordering the district court to conduct a Kastigar hearing to determine whether statements obtained by threat of job loss were improperly used in a grand jury proceeding); Stover, 40 F.3d at 1103 (holding that '[i]f an officer, whose compelled statement [under Garrity] has been considered by the grand jury, ultimately is indicted, that officer will be able to challenge the indictment and the government will be required to prove that its evidence derives entirely from legitimate sources or that the grand jury's exposure to the officer's statement was harmless'). Thus, the court concluded that statements compelled under Garrity are entitled to the full panoply of protections that Kastigar provides to other immunized statements."

Because the use of compelled testimony in the Garrity context also directly implicates the individual's fifth amendment right against self-incrimination, we agree that the protections afforded by Kastigar are available to defendants whose statements have been suppressed under Garrity.

Both parties acknowledge that Illinois courts have not yet addressed the proper standard of review on a motion to dismiss an indictment or suppress evidence under Kastigar. Both sides

also note that courts that have considered the issue generally have applied the clear error standard. E.g., United States v. Orlando, 281 F.3d 586, 593 (6th Cir. 2002). We agree that when the court uses correct legal principles, its taint determination is a factual finding subject to review under the clearly erroneous standard. United States v. Harris, 973 F.2d 333, 337 (4th Cir. 1992); United States v. Jones, 542 F.2d 186, 199 (4th Cir. 1976), cert. denied, 426 U.S. 922, 49 L. Ed. 2d 375, 96 S. Ct. 2629 (1976). However, the determination of the correct legal principles, like any question of law, is reviewed de novo. See, e.g., People v. King, 366 Ill. App. 3d 552, 852 N.E.2d 559 (2006).

The parties disagree over the scope of the burden imposed by Kastigar. Officer Haleas relies heavily on the standard articulated by the District of Columbia Circuit in United States v. North (North I), 910 F.2d 843 (D.C. Cir. 1990) (per curiam), modified, United States v. North (North II), 920 F.2d 940 (D.C. Cir. 1990) (per curiam), cert. denied, 500 U.S. 941, 114 L. Ed. 2d 477, 111 S. Ct. 2235 (1991), and United States v. Poindexter, 951 F.2d 369 (D.C. Cir. 1991), cert. denied, 506 U.S. 1021, 121 L. Ed. 2d 583, 113 S. Ct. 656 (1992). These cases, representing "the most expansive reading of the Fifth Amendment to date regarding the evidentiary use of immunized testimony" (United States v. Helmsley, 941 F.2d 71, 82 (2d Cir. 1991), cert. denied, 502 U.S. 1091, 117 L. Ed. 2d 409, 112 S. Ct. 1162 (1992)), require the prosecution to make a two-part showing to meet its Kastigar burden. First, the prosecution must prove that there is an independent source for all matters on which the witness testifies. Poindexter, 951 F.2d at 373. Second, the prosecution must prove that any witness exposed to compelled statements has not shaped or altered his or her testimony in any way, either directly or indirectly, as a result of that

exposure.  Poindexter, 951 F.2d at 373; North II, 920 F.2d at 942; North I, 910 F.2d at 860-63, 872-73.

Indeed, Officer Haleas argues that these protections extend beyond evidentiary use of his IAD statement (including the direct presentation of the statement to the grand or petit jury, as well as any derivative use of the statement) to nonevidentiary use of the statement.  Again, the Slough court summarizes the approach of the District of Columbia Circuit :

"Nonevidentiary use *** is that which does not culminate directly or indirectly in the presentation of evidence against the immunized person.  North I, 910 F.2d at 857.  Such use includes 'assistance in focusing the investigation, deciding to initiate prosecution, refusing to plea bargain, interpreting evidence, planning cross-examination and otherwise generally planning trial strategy.'  Id.  Although Kastigar clearly prohibits the government from making any direct or indirect evidentiary use of immunized testimony, see Kastigar, 406 U.S. at 460, [32 L. Ed. 2d at 226,]  92 S. Ct. [at 1664], it 'does not expressly discuss the propriety of nonevidentiary use,' North I, 910 F.2d at 858.  The Circuit declined to resolve the issue in North I, see id. at 860 (assuming without deciding that Kastigar bars nonevidentiary use of immunized testimony), and has yet to squarely address the issue, see United States v. Kilroy, 27 F.3d 679, 687 n. 7 (D.C. Cir. 1994).

Nonetheless, the court derives significant guidance regarding the permissible bounds of nonevidentiary use in the Circuit's discussion of the issue in North I.  The Circuit began its analysis by rejecting the rule articulated in United States v. McDaniel, 482 F.2d 305 (8th Cir. 1973), which held that any nonevidentiary use necessarily violates

the Fifth Amendment. See North I, 910 F.2d at 858-59 (citing McDaniel, 482 F.2d at 311). The Circuit noted its agreement with the holdings of other circuits that 'a prosecution is not foreclosed merely because the "immunized testimony might have tangentially influenced the prosecutor's thought processes in preparing for the indictment and preparing for trial." ' Id. at 859 (quoting United States v. Mariani, 851 F.2d 595, 600 (2d Cir. 1988)); see also United States v. Serrano, 870 F.2d 1, 16 (1st Cir. 1989) (concluding that the McDaniel approach 'would in effect grant a defendant transactional immunity once it is shown that government attorneys or investigators involved in the prosecution were exposed to the immunized testimony'). At the same time, the Circuit stated that insofar as the authorities criticizing McDaniel 'may be read as establishing a rule that Kastigar allows nonevidentiary use of compelled testimony under all circumstances, we find those cases troubling.' North I, 910 F.2d at 859-60; cf. Kastigar, 406 U.S. at 458-59, [32 L. Ed. 2d at 225,] 92 S. Ct. [at 1664] (observing that in order not to violate the Fifth Amendment privilege against self-incrimination, 'immunity from use and derivative use [must] "leave[ ] the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege" in the absence of a grant of immunity') (quoting [Murphy v. Waterfront Comm'n of New York Harbor, 378 U.S. 52, 79, 12 L. Ed. 2d 678, 695, 84 S. Ct. 1594, 1609 (1964)]). Ultimately, the Circuit concluded in North I that given the absence of significant prosecutorial exposure to the immunized testimony in that case, the Circuit was not required to resolve the issue because the prosecution 'could not have made significant nonevidentiary use' of the

testimony. North I, 910 F.2d at 860.

The Circuit's analysis in North I suggests that although no Kastigar violation occurs when a prosecutor's fleeting exposure to immunized testimony has a merely tangential influence on his or her thoughts about a case, a Kastigar violation may result when a prosecutor has had significant exposure to immunized testimony and makes significant nonevidentiary use of that testimony." (Emphasis omitted.) Slough, 677 F. Supp. 2d at 131.

Officer Haleas argues that the United States Supreme Court resolved this issue in his favor in Hubbell. However, the portion of Hubbell Officer Haleas cites rejects the argument that the production of documents at issue was nontestimonial; it does not address the nonevidentiary use issue. Hubbell, 530 U.S. at 45-46, 147 L. Ed. 2d at 41-42, 120 S. Ct. at 2048. We also note that other courts have ruled that Kastigar does not extend to nonevidentiary uses of an immunized statement. E.g., United States v. Mariani, 851 F.2d 595 (2d Cir. 1988); United States v. Byrd, 765 F.2d 1524 (11th Cir. 1985). Moreover, where the immunized statement is essentially a denial of alleged wrongdoing, the influence on the prosecution's strategy may be deemed tangential, rather than substantial. E.g., United States v. Bolton, 977 F.2d 1196, 1199 (7th Cir. 1992).

Officer Haleas further argues that the North approach demands much from a procedural perspective:

"[I]f the prosecution is to continue, the District Court must hold a full Kastigar hearing that will inquire into the content as well as the sources of the grand jury and trial witnesses' testimony. That inquiry must proceed witness-by-witness; if necessary, it will

-17-

proceed line-by-line and item-by-item. For each grand jury and trial witness, the prosecution must show by a preponderance of the evidence that no use whatsoever was made of any of the immunized testimony either by the witness or by the Office of Independent Counsel in questioning the witness. This burden may be met by establishing that the witness was never exposed to North's immunized testimony, or that the allegedly tainted testimony contains no evidence not 'canned' by the prosecution before such exposure occurred...Unless the District Court can make express findings that the government has carried this heavy burden as to the content of all of the testimony of each witness, that testimony cannot survive the Kastigar test. We remind the prosecution that the Kastigar burden is 'heavy' not because of the evidentiary standard, but because of the constitutional standard: the government has to meet its proof only by a preponderance of the evidence, but any failure to meet that standard must result in exclusion of the testimony." (Emphasis omitted.) North I, 910 F.2d at 872-73.

Officer Haleas argues that the State failed to carry this burden in every respect. The record on appeal shows that the trial court essentially adopted Officer Haleas's position. The transcript of proceedings shows that the trial court was concerned not only about the possible derivative use of the IAD statement, but also the statement's nonevidentiary value to the prosecution.

In contrast, the State relies on cases like United States v. Koon, 34 F.3d 1416 (9th Cir. 1994), which relied on its prior case law to reject the North approach. The Koon court noted that in United States v. Lipkis, 770 F.2d 1447, 1449-51 (9th Cir. 1985), where the defendant first made voluntary statements on three occasions to an FBI agent and subsequently made identical

statements to the same agent under a grant of immunity, the government had met its burden of proving that all the evidence introduced at trial was derived from a legitimate source that was wholly independent of the immunized statements. Koon, 34 F.3d at 1431-32. The Koon court also discussed United States v. Rogers, 722 F.2d 557, 560 (9th Cir. 1983), cert. denied, 469 U.S. 835, 83 L. Ed. 2d 70, 105 S. Ct. 129 (1984), where a government witness had attended a proceeding in which the defendant testified under a grant of immunity, but it was clear that it was based on information the witness learned on his own rather than on the immunized testimony. Koon, 34 F.3d at 1432. The Koon court ultimately held:

> "[T]he prosecutor's Kastigar burden is met if the substance of the exposed witness's testimony is based on a legitimate source that is independent of the immunized testimony. Ensuring that the content of a witness's testimony is based on personal knowledge provides the required Fifth Amendment protections and meets the Kastigar requirement that the defendant's compelled statements shall not be used against him in subsequent criminal proceedings." Koon, 34 F.3d at 1432-33.

The State argues that here, as in Koon, we are concerned primarily with occurrence witnesses testifying on the basis of their personal knowledge. Accordingly, for example, any evidence obtained from the IAD reinterview of the prosecutors who went on the ride-along was simply testimony that would emerge in any criminal investigation or trial.

We are persuaded that the Ninth Circuit's view of the scope of Kastigar is the correct one. This conclusion is rooted in the balance struck by the United States Supreme Court in Kastigar and its progeny:

"The independent source doctrine teaches us that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position tha[n] they would have been in if no police error or misconduct had occurred." (Emphasis omitted.) Nix v. Williams, 467 U.S. 431, 443, 81 L. Ed. 2d 377, 387, 104 S. Ct. 2501, 2509 (1984), citing Murphy, 378 U.S. at 79, 12 L. Ed. 2d at 695, 84 S. Ct. at 1609; Kastigar, 406 U.S. at 458-59, 32 L. Ed. 2d at 225, 92 S. Ct. at 1664.

Extending the scope of Kastigar to require dismissing an indictment where, as here, the testimony of occurrence witnesses is based on their personal knowledge would place the State in a worse position, rather than the same position they would have been in if no error or misconduct had occurred. It would require dismissal even in cases where the exact same testimony would be elicited from the witnesses in the course of an investigation or trial without any exposure to a statement procured pursuant to Garrity warnings. Extending the scope of Kastigar to all nonevidentiary uses of the IAD statement, without considering whether the use was tangential, rather than substantial, would have the same effect.

In short, we conclude that the trial court did not apply the correct legal standards of proof in conducting the Kastigar hearing. Accordingly, we vacate the order of the circuit court dismissing the indictment. Given the facts and circumstances of the case and the nature of the errors, we conclude that it would be improper for this court to conduct its own review of the evidence; thus, we remand this cause to the circuit court for a new hearing, which will allow the parties to have a full and fair opportunity to adduce evidence pertinent to the applicable standards

announced in this opinion. See, e.g., In re D.T., 212 Ill. 2d 347, 366-67, 818 N.E.2d 1214, 1228-29 (2004); People v. Masterson, 207 Ill. 2d 305, 330, 798 N.E.2d 735, 749 (2003); Jensen v. East Dundee Fire Protection District Firefighters' Pension Fund Board of Trustees, 362 Ill. App. 3d 197, 198-99, 839 N.E.2d 670, 672 (2005).

CONCLUSION

In sum, we conclude that the circuit court did not err in granting the motion to suppress Officer Haleas's IAD statement. However, the circuit court erred in granting the motion to dismiss the indictment against Officer Haleas. The order dismissing the indictment is vacated and the cause is remanded for a new hearing in accordance with the standards stated in this opinion.

Affirmed in part and vacated in part; cause remanded.

NEVILLE and MURPHY, JJ., concur.

| | REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT |
|---|---|
| **Please Use Following Form:** | (Front Sheet to be Attached to Each Case) |
| **Complete TITLE of Case** | THE PEOPLE OF THE STATE OF ILLINOIS,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>JOHN HALEAS,<br><br>Defendant-Appellee. |
| **Docket No.**<br><br>**COURT**<br><br>**Opinion Filed** | No. 1-09-3353<br>Appellate Court of Illinois<br>First District, THIRD Division<br><br>October 13, 2010<br>(Give month, day and year) |
| **JUSTICES** | JUSTICE STEELE delivered the opinion of the court:<br><br>Neville and Murphy, JJ.,     concur<br><br>dissent[s] |
| **APPEAL from the Circuit Ct. of Cook County, Chancery Div.** | Lower Court and Trial Judge(s) in form indicated in the margin:<br>Circuit Ct. of Cook County, Criminal Div.<br>The Honorable  James M. Obbish  , Judge Presiding. |
| **For APPELLANTS, John Doe, of Chicago.**<br><br>**For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)**<br><br>**Also add attorneys for third-party appellants or appellees.** | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br>Attorney for **Plaintiff-Appellant**:    Anita Alvarez, Cook County State's Attorney (Chicago, IL) (Alan J. Spellberg, Ashley A. Romito, and Jessica R. Ball, Assistant State's Attorneys, of Counsel)<br><br>Attorneys for **Defendant-Appellee:**    Law Offices of Thomas P. Needham (Chicago, IL) (Thomas P. Needham, of Counsel)<br><br>Law Offices of William N. Fahy (Chicago, IL) (William Fahy, of Counsel)<br><br>Daly & Russell, LLC (Chicago, IL) (Colleen R. Daly and Jennifer W. Russell, of Counsel) |