State of Nebraska, appellee, v.
Michael S. Weichman, appellant.
___ N.W.2d ___

Filed December 4, 2015.    No. S-15-368.

1. **Motions to Suppress: Confessions: Constitutional Law: Appeal and Error.** In reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, an appellate court applies a two-part standard of review. With regard to historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts suffice to meet the constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Self-Incrimination.** The protections of the Fifth Amendment to the U.S. Constitution are generally not self-executing.

3. ____: ____. There are two main exceptions to the general rule that the Fifth Amendment to the U.S. Constitution is not self-executing: where a suspect is in police custody and the so-called penalty exception, where the assertion of the privilege is penalized so that the option to remain silent is foreclosed and the incriminating testimony is effectively compelled.

4. **Self-Incrimination: Termination of Employment.** An implicit threat of termination of employment can be sufficient to support a claim that a statement was coerced.

5. ____: ____. In order to determine whether a statement is coerced for purposes of the penalty exceptions, courts apply a two-pronged approach: (1) that the defendant have a subjective belief that he or she was compelled to give a statement on threat of the loss of his or her job and (2) that the defendant's belief be objectively reasonable.

6. ____: ____. A subjective belief will not be considered objectively reasonable if the state has played no role in creating the impression that the refusal to give a statement will be met with termination of employment.

7. ____: ____. The existence of a statute, rule, regulation, or policy subjecting an employee to termination for the failure to provide a statement is

highly relevant, though not usually dispositive, in determining whether a subjective belief is objectively reasonable. Under this subjective/objective test, a court examines the totality of the circumstances surrounding the statement.

Appeal from the District Court for York County: JAMES C. STECKER, Judge. Affirmed.

Mark Porto, of Shamberg, Wolf, McDermott & Depue, for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, McCORMACK, MILLER-LERMAN, CASSEL, and STACY, JJ.

HEAVICAN, C.J.

## INTRODUCTION

Michael S. Weichman, appellant, was convicted of first degree sexual abuse of an inmate and was sentenced to 1 to 2 years' imprisonment. At issue on appeal is whether statements made by Weichman during a polygraph examination were admissible against him at trial. We conclude that the statements were admissible and accordingly affirm.

## FACTUAL BACKGROUND

Weichman was employed by the Nebraska Department of Correctional Services as a maintenance supervisor at the Nebraska Correctional Center for Women (NCCW). On April 21, 2014, reports were received that Weichman had engaged in sexual intercourse with an NCCW inmate. Weichman was interviewed regarding the allegation and denied the reports. The inmate was also interviewed and denied the allegations.

On May 5, 2014, Weichman submitted to a polygraph examination. During the course of the examination, Weichman made statements admitting that he had received oral sex from the inmate in question about 2 to 3 weeks prior to the polygraph examination.

On May 15, 2014, the inmate was interviewed again and initially denied the relationship. But after being told that Weichman had admitted to a sexual relationship, she also admitted to the relationship and indicated that she and Weichman had engaged in sexual intercourse four or five times and that she had performed oral sex on Weichman on at least two occasions prior to the sexual intercourse.

On June 20, 2014, Weichman was charged by information with first degree sexual abuse of an inmate. He filed a motion to suppress both the statements he made during the polygraph, under *Garrity v. New Jersey*,[1] and the statements made by the inmate as fruit of the poisonous tree. Weichman's motion to suppress was denied.

At the hearing on the motion to suppress, Benny Noordhoek, an investigator with the Department of Correctional Services, testified. Noordhoek had been tasked with investigating the allegations against Weichman. In the course of that investigation, Noordhoek questioned Weichman about the allegations. Prior to that questioning, Weichman was informed of his *Miranda*[2] rights. Weichman denied the relationship.

Noordhoek asked Weichman if he would be willing to take a polygraph examination. Weichman agreed. Noordhoek testified he explained to Weichman that a polygraph was presented as an option to Weichman, not a requirement, and that Weichman could not be forced to submit to the polygraph. Noordhoek told Weichman he would get back to him with the details of the polygraph examination.

Weichman testified that he initially agreed to take a polygraph examination, but was reconsidering that decision when he received a "written directive" from the NCCW warden regarding the polygraph. After receiving the directive and

---

[1] *Garrity v. New Jersey*, 385 U.S. 493, 87 S. Ct. 616, 17 L. Ed. 2d. 562 (1967).

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

speaking with the warden, Weichman believed that taking the polygraph was nonnegotiable and that he would be fired if he refused to do so. He acknowledged that no one, including Noordhoek, the warden, or the polygraph examiner, ever told him that he would be fired for refusing to take the polygraph. Weichman admitted that the polygraph examiner told him that he, the examiner, could not force Weichman to take the examination. The polygraph examiner also informed Weichman that he did not know what the employment ramifications might be if Weichman declined to take the polygraph.

The warden also testified about her delivery of the directive to Weichman regarding the polygraph. She indicated that she provided Weichman with details of the time and place of his examination, and also informed him that he could use a State vehicle and State time to travel to the examination. The warden testified that she was really only complying with Noordhoek's request to inform Weichman of the pertinent details of the examination, a fact confirmed by Noordhoek. But Noordhoek also confirmed that on its face, the directive was to Weichman from the warden.

A bench trial on stipulated facts was held on March 3, 2015, after which Weichman was found guilty of first degree sexual abuse of an inmate. He was sentenced to 1 to 2 years' imprisonment. He appeals.

## ASSIGNMENT OF ERROR

Weichman makes three assignments of error that can be consolidated and restated into one: The district court erred in denying his motion to suppress.

## STANDARD OF REVIEW

[1] In reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, an appellate court applies a two-part standard of review.[3] With regard to historical facts, we review the trial court's findings for clear

---

[3] *State v. Bormann*, 279 Neb. 320, 777 N.W.2d 829 (2010).

error.[4] Whether those facts suffice to meet the constitutional standards, however, is a question of law, which we review independently of the trial court's determination.[5]

## ANALYSIS

On appeal, Weichman argues that the district court erred in denying his motion to suppress. Weichman contends that the statements he made during his polygraph were not voluntary under the 5th and 14th Amendments to the U.S. Constitution and under *Garrity*[6] and should have been suppressed.

[2,3] The protections of the Fifth Amendment are generally not self-executing. "[I]n the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the [Fifth Amendment] privilege, the government has not 'compelled' him to incriminate himself."[7] But, "application of this general rule is inappropriate in certain well-defined situations."[8] "In each of those situations . . . some identifiable factor 'was held to deny the individual a "free choice to admit, to deny, or to refuse to answer."'"[9] There are two main exceptions to this general rule: where a suspect is in police custody,[10] commonly referred to as "*Miranda*[11] rights," and where "the assertion of the privilege is penalized so that the option to remain silent is foreclosed and the incriminating testimony is effectively compelled."[12]

---

[4] *Id.*

[5] *Id.*

[6] *Garrity, supra* note 1.

[7] *Garner v. United States*, 424 U.S. 648, 654, 96 S. Ct. 1178, 47 L. Ed. 2d 370 (1976).

[8] *Minnesota v. Murphy*, 465 U.S. 420, 429, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984).

[9] *Id*. (citing *Garner, supra* note 7).

[10] *Miranda, supra* note 2.

[11] *Id.*

[12] *U.S. v. Camacho*, 739 F. Supp. 1504, 1513 (S.D. Fla. 1990) (citing *Murphy, supra* note 8).

The seminal U.S. Supreme Court case setting forth this so-called penalty exception is *Garrity*.[13] In *Garrity*, the New Jersey Attorney General was investigating the alleged fixing of traffic tickets. During the investigation, the defendant police officers were questioned. Prior to that questioning, each officer was informed that (1) anything the officer said might be used against him in a criminal proceeding; (2) the officer had a privilege to refuse to answer if the disclosure would tend to be incriminating; and (3) if the officer refused to testify, he would be subject to removal from office.

The officers did not invoke the Fifth Amendment and answered the questions asked of them. Over their objections, some of those statements were later offered against them in criminal prosecutions for conspiracy to obstruct the administration of the traffic laws. The defendants appealed, arguing that the statements offered against them were coerced because the officers risked losing their jobs if they failed to answer the questions.

The Supreme Court found that the officers' statements were not voluntary,[14] noting that "[t]he choice given [the defendants] was either to forfeit their jobs or to incriminate themselves"[15] and that "[t]he option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent."[16] The Court also noted that the State's practice was "'likely to exert such pressure upon an individual as to disable him from making a free and rational choice.'"[17] The Court concluded that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from

---

[13] *Garrity, supra* note 1.

[14] *Id.*

[15] *Id*., 385 U.S. at 497.

[16] *Id.*

[17] *Id.*

office, and that . . . extends to all, whether they are policemen or other members of our body politic."[18]

Since its decision in *Garrity*, the Supreme Court has noted that the decision was "limited to instances where an interviewee is coerced into waiving his constitutional right against self-incrimination through the threat of dismissal,"[19] and "[did] not prohibit the state from compelling an employee from answering questions directly and narrowly related to his duties, provided that he is not coerced into relinquishing his privilege against self-incrimination."[20]

There are generally two approaches courts take when determining whether a defendant's right against self-incrimination under *Garrity* was violated. The first approach is set forth in *United States v. Indorato*.[21] There, the defendant was not explicitly told that he would be dismissed for the failure to submit to questioning, but he argued that departmental rules required him to obey the lawful order of his superior or be dismissed. The First Circuit rejected this argument, noting that

> [i]n all of the cases flowing from *Garrity*, there are two common features: (1) the person being investigated is explicitly told that failure to waive his constitutional right against self-incrimination will result in his discharge from public employment . . . ; and (2) there is a statute

---

[18] *Id.*, 385 U.S. at 500.

[19] *Camacho, supra* note 12, 739 F. Supp. at 1514 (citing *Gardner v. Broderick*, 392 U.S. 273, 88 S. Ct. 1913, 20 L. Ed. 2d 1082 (1968)).

[20] *Id.* See, *Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S. Ct. 2132, 53 L. Ed. 2d 1 (1977); *Sanitation Men v. Sanitation Comm'r.*, 392 U.S. 280, 88 S. Ct. 1917, 20 L. Ed. 2d 1089 (1968); *Gardner, supra* note 19.

[21] *United States v. Indorato*, 628 F.2d 711 (1st Cir. 1980). See, also, *U.S. v. Stein*, 233 F.3d 6 (1st Cir. 2000); *Singer v. State of ME.*, 49 F.3d 837 (1st Cir. 1995); *People v. Bynum*, 159 Ill. App. 3d 713, 512 N.E.2d 826, 111 Ill. Dec. 437 (1987); *Commonwealth v. Harvey*, 397 Mass. 351, 491 N.E.2d 607 (1986); *People v. Coutu*, 235 Mich. App. 695, 599 N.W.2d 556 (1999); *State v. Litvin*, 147 N.H. 606, 794 A.2d 806 (2002).

or municipal ordinance mandating such procedure. In this case, there was no explicit "or else" choice and no statutorily mandated firing is involved.[22]

Thus, under *Indorato* and subsequent cases following its reasoning, *Garrity* is limited to its facts; a defendant is not entitled to its protections unless the defendant was told that his or her employment would be terminated and there was a statute mandating such discharge.

[4-7] In contrast to the *Indorato* line of cases, other courts have concluded that an implicit threat of termination of employment might be sufficient to support a claim that a statement was coerced under G*arrity*. These courts adopt a two-pronged approach: (1) that the defendant have a subjective belief that he or she was compelled to give a statement on threat of the loss of his or her job and (2) that the defendant's belief be objectively reasonable.[23] A subjective belief that *Garrity* applies will not be considered objectively reasonable if the state has played no role in creating the impression that the refusal to give the statement will be met with termination of employment.[24] The existence of a statute, rule, regulation, or policy subjecting an employee to termination for the failure to provide a statement is highly relevant, though not usually dispositive, in determining whether a subjective belief is objectively reasonable.[25] Under this test, a court examines the totality of the circumstances surrounding the statement.[26]

Both Weichman and the State argue that the subjective/objective test is the appropriate test to utilize; the district court

---

[22] *Indorato, supra* note 21, 628 F.2d at 716.

[23] See, e.g., *U.S. v. Friedrick*, 842 F.2d 382 (D. C. Cir. 1988). But see *State v. Aiken*, 282 Ga. 132, 646 S.E.2d 222 (2007).

[24] *Camacho, supra* note 12.

[25] See *id.*

[26] See, *U.S. v. Vangates*, 287 F.3d 1315 (11th Cir. 2002); *Camacho, supra* note 12; *People v. Sapp*, 934 P.2d 1367 (Colo. 1997); *State v. Chavarria*, 131 N.M. 172, 33 P.3d 922 (N.M. App. 2001); *State v. Brockdorf*, 291 Wis. 2d 635, 717 N.W.2d 657 (2006).

also applied this test. We agree. As such, we must first consider whether Weichman held a subjective belief that his employment would be terminated for failing to submit to the polygraph examination. If we conclude that Weichman held such a subjective belief, we must then ask whether that subjective belief was objectively reasonable.

Weichman testified that he believed he would be fired if he refused to take the polygraph examination. The district court accordingly found that Weichman had a subjective belief that his employment would be terminated. There was no error in this finding.

This subjective belief satisfies the first prong of the subjective/objective test. But we cannot conclude the second prong was met, because on these facts, Weichman's subjective belief was not objectively reasonable. In coming to this conclusion, we examine the totality of the circumstances.

Weichman initially agreed to take the polygraph, even though he was told that he did not have to do so. Upon Weichman's agreement, Noordhoek, the investigator, told Weichman he would be in touch regarding details of the test. Prior to the commencement of this questioning and conversation regarding the polygraph, Weichman was read his *Miranda* rights.

Soon thereafter, Weichman was called to see the NCCW warden and was given a document entitled "Written Directive." That document set forth the details of his polygraph examination. The evidence shows that the warden did not tell Weichman that he must submit to the polygraph or be fired. At the time, the warden informed Weichman that he could use a State vehicle and worktime to attend the polygraph.

Upon attending the polygraph, Weichman was again read his *Miranda* rights. The record is clear that the polygraph examiner told Weichman that he did not have to take the examination. The examiner also told Weichman that he, the examiner, did not know what the ramifications of refusing to take the test would be.

We note that there was no express threat made to Weichman regarding termination for failure to submit to the polygraph or to questioning. Nor is there any statute, ordinance, rule, regulation, or policy that would require Weichman's termination for his failure to submit to the polygraph or to otherwise fail to cooperate with an investigation.

Weichman alleges that the warden's "written directive" was a sufficient action which made his belief that he would be fired objectively reasonable. We disagree. We observe that Weichman was expecting to receive information about the polygraph examination from Noordhoek. Particularly, given the totality of all the circumstances as described above, we cannot conclude that the fact that information about the polygraph was received from the warden and not from Noordhoek transforms Weichman's otherwise subjective belief into an objectively reasonable one. We therefore conclude that the district court did not err in denying Weichman's motion to suppress his own statements.

Having concluded that Weichman's statements were admissible, we need not address his contention that the victim's statements were inadmissible as fruit of the poisonous tree. Because there was no tree, there can be no fruit.

## CONCLUSION

The district court did not err in denying Weichman's motion to suppress. Accordingly, we affirm Weichman's conviction and sentence.

AFFIRMED.